# Illinois Official Reports

## Appellate Court

---

### *People v. Cavette*, 2018 IL App (4th) 150910

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JUSTIN E. CAVETTE, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-15-0910 |
| Filed | October 23, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 15-CF-695; the Hon. Heidi N. Ladd, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Gavin J. Dow, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Julia Rietz, State's Attorney, of Urbana (Patrick Delfino, David J. Robinson, and David E. Mannchen, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE KNECHT delivered the judgment of the court, with opinion.<br>Presiding Justice Harris and Justice Cavanagh concurred in the judgment and opinion. |

**OPINION**

¶ 1        In October 2015, a jury found defendant, Justin E. Cavette, guilty of armed habitual criminal (720 ILCS 5/24-1.7(a)(1) (West 2014)) and unlawful possession of cannabis (720 ILCS 550/4(c) (West 2014)). Defendant appealed his convictions and sentence.

¶ 2        In June 2017, while defendant's appeal was pending, defendant's 2011 aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2010)) conviction, a predicate offense to the armed habitual criminal conviction, was vacated. The statute by which defendant had been convicted was declared by the Illinois Supreme Court to be facially unconstitutional. On appeal, defendant argues, in part, his armed habitual criminal conviction must be reversed as his AUUW conviction, a predicate offense, is void *ab initio*. Defendant further argues the trial court improperly instructed the jury regarding evidence of the predicate offenses, undermining the guilty verdict on both charges. We agree and reverse and remand for a new trial.

¶ 3                                    I. BACKGROUND

¶ 4        In May 2015, defendant was arrested and charged with armed habitual criminal and unlawful possession of cannabis after he was found in the same apartment as two bags of marijuana hidden in a bathroom trash can and a handgun tucked into a full laundry basket. Specifically, regarding the armed habitual criminal charge, the State alleged the following:

> "[D]efendant knowingly possessed a firearm, namely a High Point .380 handgun, after having previously been convicted of the offense of Unlawful Use of Weapon by a Felon, a class 3 felony, in Champaign County cause number 08-CF-1750 and of the offense of Aggravated Unlawful Use of a Weapon, a class 2 felony, in Champaign County cause number 11-CF-1477 *** [(720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2010))]."

¶ 5        At the October 2015 jury trial, testimony established defendant was at his sister's home at 1517 Hunter Street in Urbana, Illinois, attending a barbecue with friends and family. He stayed at the barbecue most of the day, drinking, eating, and wrestling with his uncle. Two family members testified to having physical contact with defendant. Defendant's uncle wrestled with defendant, having "him up and folding him all type of ways all day long." Defendant's sister welcomed defendant to the barbecue with a big hug. Neither felt nor observed a gun on defendant.

¶ 6        According to testimony, defendant told his sister around 5 p.m. that he was leaving to smoke marijuana with Richard Lane, who lived in an apartment at 1507 Hunter Street. The sister observed defendant with a small Baggie of marijuana. Defendant was also carrying a bottle of vodka. Robin Arbiter, who lived in a neighboring apartment, watched through her window as defendant walked through the parking lot. She was approximately 30 feet from defendant. Defendant had a bottle in one hand. In the other hand, defendant was "sliding [a gun] in and out of his pocket partially and almost to the top of his pocket." Arbiter stated she could clearly see it was a silver and black gun. She called the police.

¶ 7        Lane testified he saw defendant pull up in a car and step out. Lane invited defendant into his apartment. They talked for a couple minutes in the living room. The police arrived. Lane, looking out for defendant, told police defendant had left. After the police said they wanted to

talk with defendant, Lane reported he was in the bathroom, which is where officers found him. The officers allowed defendant to finish using the bathroom before they escorted him out.

¶ 8 With Lane's permission, police searched the apartment. An officer found a large Baggie and a small Baggie of marijuana hidden in the trash can, below the garbage bag. These items were sent to the Illinois State Police crime laboratory for testing and fingerprinting. No fingerprints were found. Officers searched Lane's bedroom and bedroom closet. Inside the closet was a laundry basket. An officer removed a shirt sitting on top and found, pushed into the side of the basket, a gun. The gun and marijuana were sent to the crime lab. No forensic physical evidence linked the gun or marijuana to defendant.

¶ 9 Lane initially told the police he did not smoke marijuana but admitted at trial to using it "at times." Lane denied the marijuana or gun were his. Lane stated he had not looked inside the trash can for approximately one month or in the laundry basket for a week or two before defendant's arrest. Lane testified he occasionally had guests at his apartment but "not too much." According to Lane, defendant was the only individual who visited him that day. Defendant's sister testified she observed others at Lane's earlier the same day.

¶ 10 The parties stipulated defendant "was previously convicted of two prior qualifying offenses under the armed habitual criminal statute." After asking both parties if they agreed to the stipulation, the trial court advised the jury of the following: "Ladies and gentlemen, you should consider this along with all of the other evidence in this case."

¶ 11 Approximately 2½ hours after deliberations began, the jury sent a note asking, "when did [Arbiter] first describe the [weapon] details?" Twenty minutes later, the jury sent a note regarding the cannabis charge: "If the defendant intended to smoke cannabis but did not have knowledge of the bags of cannabis found, was he in possession of those bags of cannabis?" The jury, almost four hours into deliberations, informed the trial court they were deadlocked: "We are unable to come to an agreement on either charge. Please advise." The parties agreed the jury should be given the deadlock instruction. The jury asked to hear the testimony of two of the witnesses, Arbiter and a police officer. Almost eight hours after deliberations began, the jury reached a verdict.

¶ 12 Defendant was found guilty of both armed habitual criminal and possession of cannabis. In November 2015, he was sentenced to concurrent terms of 3 years' imprisonment for possession of cannabis and 16 years for armed habitual criminal. Defendant appealed.

¶ 13 While defendant's appeal was pending, the Illinois Supreme Court, in December 2015, clarified it found facially unconstitutional the entire AUUW offense contained in section 24-1.6(a)(1), (a)(3)(A) of Criminal Code of 1961 (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2008)). See *People v. Burns*, 2015 IL 117387, ¶¶ 22-23, 79 N.E.3d 159. Section 24-1.6(a)(1), (a)(3)(A) is the section by which defendant was convicted in 2011. In June 2017, the circuit court of Champaign County vacated defendant's 2011 AUUW conviction.

¶ 14                                      II. ANALYSIS

¶ 15          A. A Prior Conviction Based on a Statute That Has Been Subsequently
              Declared Facially Unconstitutional May Not Serve as Proof of a Predicate
              Felony Conviction in Prosecuting the Offense of Armed Habitual Criminal.

¶ 16          This issue presents a question of law, which we review *de novo*. *People v. Smith*, 191 Ill. 2d 408, 411, 732 N.E.2d 513, 514 (2000).

¶ 17          The offense of armed habitual criminal appears in section 24-1.7(a) of the Criminal Code of 2012 (720 ILCS 5/24-1.7(a) (West 2014)). To be convicted of armed habitual criminal, a defendant must have at least two convictions of specified offenses:

> "(a) A person commits the offense of being an armed habitual criminal if he or she receives, sells, possesses, or transfers any firearm after having been convicted a total of 2 or more times of any combination of the following offenses:
>
> ***
>
> (2) unlawful use of a weapon by a felon [or] aggravated unlawful use of a weapon ***." *Id.* § 24-1.7(a)(2).

Armed habitual criminal is a Class X felony. *Id.* § 24-1.7(b).

¶ 18          One of the predicate offenses for defendant's armed habitual criminal conviction—defendant's 2011 AUUW conviction—is facially unconstitutional and invalid. The validity of the AUUW statute was finally determined over the course of two Illinois Supreme Court decisions: *People v. Aguilar*, 2013 IL 112116, 2 N.E.3d 321, and *Burns*, 2015 IL 117387. In *Aguilar*, the court held specific subsections of section 24-1.6(a) of the AUUW statute, which as a whole banned individuals from carrying outside their home any firearm that was uncased, loaded, and immediately accessible, to be facially unconstitutional pursuant to the second amendment. *Aguilar*, 2013 IL 112116, ¶ 22. In *Burns*, the court clarified the *Aguilar* holding extends to the entirety of the AUUW offense in section 24-1.6(a)(1), (a)(3)(A) (*Burns*, 2015 IL 117387, ¶ 22), the section on which defendant's AUUW conviction is based.

¶ 19          Defendant argues, because his AUUW conviction is based on a facially unconstitutional statute, the void *ab initio* doctrine applies and his armed habitual criminal conviction—based on an invalid conviction—must accordingly be reversed.

¶ 20          According to the *ab initio* doctrine, when a statute is found facially unconstitutional—unconstitutional in all its applications (see *In re Rodney H.*, 223 Ill. 2d 510, 521, 861 N.E.2d 623, 630 (2006))—it is void " 'from the beginning.' " *Perlstein v. Wolk*, 218 Ill. 2d 448, 455, 844 N.E.2d 923, 926 (2006) (quoting Black's Law Dictionary 1604 (8th ed. 2004)). This means the statute was constitutionally infirm from the time of its enactment and is unenforceable. *People v. Blair*, 2013 IL 114122, ¶ 30, 986 N.E.2d 75. "A conviction under an unconstitutional law 'is not merely erroneous, but is illegal and void, and cannot be a legal cause of imprisonment.' " *Montgomery v. Louisiana*, 577 U.S. ___, ___, 136 S. Ct. 718, 730 (2016) (quoting *Ex parte Siebold*, 100 U.S. 371, 376-77 (1880)); see also *People v. Price*, 2016 IL 118613, ¶ 31, 76 N.E.3d 1240 ("[A] judgment will be deemed void *** where the judgment was based on a statute that is facially unconstitutional and void *ab initio* ***."). The Illinois Supreme Court dictates the strict application of the void *ab initio* doctrine when "a defendant's constitutionally guaranteed rights are in need of vindication." *Perlstein*, 218 Ill. 2d at 466.

- 4 -

¶ 21    Due to its fundamental constitutional flaw, courts may not enforce convictions under subsection 24-1.6(a)(1), (a)(3)(A) of the AUUW statute, including defendant's AUUW conviction. As Justice Kilbride concludes in his concurrence in part and dissent in part, "*no one* may be, or has ever been, validly convicted under that subsection." (Emphasis in original.) *People v. McFadden*, 2016 IL 117424, ¶ 61, 61 N.E.3d 74 (Kilbride, J., concurring in part and dissenting in part, joined by Burke, J.).

¶ 22    The question here is whether defendant's unconstitutional AUUW conviction may serve as a predicate felony conviction for armed habitual criminal. In its brief before this court, the State maintained it could. According to the State's initial argument, the void *ab initio* doctrine did not foreclose using defendant's conviction as a predicate offense for armed habitual criminal. The State based its conclusion on the holding in *McFadden*, 2016 IL 117424, ¶¶ 1, 29 (majority opinion), in which the Illinois Supreme Court upheld a conviction for unlawful use of a weapon by a felon (UUWF) that was predicated on a void AUUW conviction, and the First District cases that extended *McFadden*'s holding to the armed habitual criminal statute (see, *e.g.*, *People v. Smith*, 2017 IL App (1st) 151643, ¶¶ 16-24, 89 N.E.3d 960; *People v. Perkins*, 2016 IL App (1st) 150889, ¶ 10, 63 N.E.3d 207).

¶ 23    In *McFadden*, the court's analysis turned on a comparison of the UUWF statute to a similar federal firearms statute—one considered by the United States Supreme Court in *Lewis v. United States*, 445 U.S. 55 (1980). *McFadden*, 2016 IL 117424, ¶ 28. In *Lewis*, the petitioner attempted to overturn his conviction for being a felon in possession of a firearm by challenging the use of his uncounseled state felony conviction as a predicate offense. See *id.* ¶ 22 (citing *Lewis*, 445 U.S. at 67). The *Lewis* Court rejected the petitioner's attempt to overturn his conviction by concluding the plain meaning of the federal firearms statute establishes " 'the fact of a felony conviction imposes a firearm disability until the conviction is vacated or the felon is relieved of his disability by some affirmative action.' " *Id.* ¶ 23 (quoting *Lewis*, 445 U.S. at 60-61). The *McFadden* court then found "no reason to treat the interpretation of section 24-1.1(a) differently than the Supreme Court's interpretation of the similar federal statute in *Lewis*." *Id.* ¶ 28. The *McFadden* court concluded the UUWF statute, like the federal statute, is not concerned with prosecuting or enforcing the prior conviction, but only with " 'the role of that conviction as a disqualifying condition for the purpose of obtaining firearms.' " *Id.* ¶ 29 (quoting *United States v. Mayfield*, 810 F.2d 943, 946 (10th Cir. 1987)). The court then upheld the UUWF conviction that was predicated upon the void AUUW conviction. *Id.* ¶ 37.

¶ 24    One week before oral argument in this case, *McFadden* was overruled. In *In re N.G.*, 2018 IL 121939, ¶ 1, the Illinois Supreme Court considered an appeal from an order terminating parental rights based on a finding of depravity. The trial court based its depravity finding on respondent father's three felony convictions—one of which was a void conviction for AUUW. *Id.* ¶¶ 1-2. The Department of Children and Family Services, citing *McFadden*, argued the unconstitutional AUUW conviction could be used to meet its burden of establishing the respondent father was "depraved." (Internal quotation marks omitted.) *Id.* ¶ 60. To address this argument, the court engaged in a lengthy analysis of *McFadden* (see *id.* ¶¶ 60-77) and concluded that analysis was flawed. See *id.* ¶ 76 ("Had our analysis in *McFadden* taken into account the distinction between a prior conviction resulting from a constitutionally deficient procedure[, in *Lewis*,] and one based on a facially unconstitutional statute, the approach we took in that case would have been different."). The court held

because the respondent father's unconstitutional AUUW conviction is null and void, that conviction "cannot serve as a basis for finding him depraved under section 1(D)(i) of the Adoption Act (750 ILCS 50/1(D)(i) (West 2010))." *Id.* ¶ 84. The court also cited *Montgomery* and found void convictions may not give rise to criminal status or create a legal impediment. *Id.* ¶ 73. Notably, the court left open the question of whether the result in *McFadden* could be reached in the criminal context using a different approach: "Even if *Lewis* could somehow be construed to justify the result in *McFadden*, notwithstanding the fundamental qualitative difference in the predicate convictions, we would decline to extend it to the matter before us here." *Id.* ¶ 77.

¶ 25　　At oral argument, the State conceded defendant's armed habitual criminal conviction must be vacated. The State reasoned it relied on *McFadden* for its appellate argument and *McFadden* had been overruled.

¶ 26　　We accept the State's concession. Applying the rationale of *N.G.* and the void *ab initio* doctrine, we find defendant's void AUUW conviction may not serve as a predicate felony conviction for armed habitual criminal. See *id.* ¶ 73 (convictions that are void "can give rise to no criminal status nor create any legal impediment, for the state had no authority, and the courts never acquired jurisdiction, to impose punishment under such laws to begin with"); see also *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 731 ("There is no grandfather clause that permits States to enforce punishments the Constitution forbids."). We, therefore, reverse defendant's conviction for armed habitual criminal.

¶ 27　　　　　　　B. The Trial Court Committed Plain Error in Instructing the Jury to
　　　　Consider Other Crimes Evidence "Along With All of the Other Evidence in the Case."

¶ 28　　Defendant next argues he was denied due process when the trial court, after the jury heard the stipulation to his two earlier convictions, instructed the jury "you should consider this along with all of the other evidence of the case." Defendant emphasizes evidence of other crimes is highly prejudicial and may not be used to infer criminal propensity. According to defendant, the court erred in telling the jury such evidence could be considered like other evidence of the case. Defendant acknowledges he failed to object at trial but argues for reversal based on plain error. The State does not dispute defendant's contention the jury was so instructed or that plain error occurred.

¶ 29　　In general, a defendant who fails to object to an alleged error at trial and include the issue in a posttrial motion forfeits an issue on appeal. *People v. Belknap*, 2014 IL 117094, ¶ 47, 23 N.E.3d 325. A court of review may redress forfeited errors when clear or obvious error occurred and (1) the evidence is so closely balanced the error alone "threatened to tip the scales of justice against the defendant" *or* (2) the error is so serious it affected the fairness of the trial and challenged the integrity of the judicial process. *Id.* ¶ 48. Our first step in plain-error analysis is to ascertain whether an error occurred. *People v. Curry*, 2013 IL App (4th) 120724, ¶ 62, 990 N.E.2d 1269.

¶ 30　　The purpose of an instruction to the jury is to provide the jury with correct legal principles that is applicable to the evidence to allow the jury to make a correct conclusion in accordance with the law and evidence. *People v. Fonder*, 2013 IL App (3d) 120178, ¶ 19, 996 N.E.2d 745. When the issue is whether the applicable law was conveyed correctly to the jury, our standard of review on appeal is *de novo*. *Id.*

¶ 31    A jury instruction like the one made here was found to be inaccurate by the Second District. In *People v. Johnson*, 2013 IL App (2d) 110535, ¶ 71, 991 N.E.2d 396, the court considered the accuracy of the following statement made after a stipulation to a felony conviction was read to the jury: " '[t]his information concerning the agreement of these facts can be used by you like any other evidence.' " As defendant argues, other-crimes evidence "is generally inadmissible to demonstrate propensity to commit the charged crime." *People v. Donoho*, 204 Ill. 2d 159, 170, 788 N.E.2d 707, 714 (2003). This is due to the fact that such evidence gives rise to the natural inference that "because a person committed other crimes, he or she is more likely to have committed the current crime." *People v. Manning*, 182 Ill. 2d 193, 214, 695 N.E.2d 423, 432 (1998).

¶ 32    While we make no determination as to whether the trial court must *sua sponte* provide an instruction limiting the jury's consideration of the evidence, the court, when informing the jury of the law, had a duty to do so accurately. We find defendant, particularly in light of the State's absence of a response to the contrary, sufficiently proved the trial court's instruction was an erroneous statement of law, improperly authorizing the jury to use the evidence of other crimes beyond the limited purpose of satisfying the predicate felony elements of the armed habitual criminal offense.

¶ 33    We further find this error arises to plain error as the evidence at trial was so closely balanced that the error, by itself, threatened to tip the scales of justice against defendant. See *Belknap*, 2014 IL 117094, ¶ 48. Only one witness, from a distance, observed defendant with a gun. The police did not find the gun or the marijuana on defendant's person. Neither the marijuana nor the gun found in Lane's apartment was forensically linked to defendant. After several hours of deliberations, the jury informed the trial court it was deadlocked on both issues. The ultimate question of whether defendant possessed the marijuana turned on whether to believe Lane's testimony the marijuana was not his. This question is tainted when the jury knows defendant, and not Lane, had been convicted of two crimes subjecting him to armed habitual criminal status and the jury was authorized to consider such evidence "along with all of the other evidence." Defendant is entitled to a new trial on the possession of cannabis charge.

¶ 34                                III. CONCLUSION

¶ 35    We reverse defendant's conviction for armed habitual criminal. We reverse defendant's conviction for possession of cannabis and remand for a new trial.

¶ 36    Reversed and remanded.

- 7 -