**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 230214-U

Order filed January 21, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0214 Circuit No. 21-CF-2186 |
| OMAR J. CORRAL, | ) ) ) | Honorable Michael W. Reidy, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HETTEL delivered the judgment of the court.
Justices Anderson and Bertani concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  (1) Defendant's conviction for being an armed habitual criminal was invalid where it was based on an unconstitutional aggravated unlawful use of a weapon conviction. (2) Defendant must be resentenced where his void aggravated unlawful use of a weapon conviction was relied on during sentencing. (3) Defendant's convictions for unlawful use of a weapon by a felon and aggravated discharge of a firearm did not violate the one-act, one-crime doctrine. (4) The statutes under which defendant was convicted are facially constitutional.

¶ 2     Defendant, Omar J. Corral, appeals from his convictions, arguing (1) his conviction for

being an armed habitual criminal (AHC) should be vacated where it was based on a void

*ab initio* conviction for aggravated unlawful use of a weapon (AUUW); (2) he should be resentenced as the Du Page County circuit court placed significant emphasis on his void AUUW conviction; (3) his convictions for unlawful use of a weapon by a felon (UUWF), aggravated discharge of a firearm, and AHC violated the one-act, one-crime doctrine; and (4) the UUWF and AHC statutes are facially unconstitutional under both the United States and Illinois Constitutions. We affirm in part, vacate in part, and remand.

¶ 3                                    I. BACKGROUND

¶ 4        On January 6, 2022, defendant was charged by indictment with (1) AHC (720 ILCS 5/24-1.7 (West 2022)) for possessing a firearm after having been convicted of AUUW and unlawful delivery of a controlled substance; (2) two counts of aggravated discharge of a firearm (*id.* § 24-1.2(a)(2), (b)) for knowingly discharging a firearm at a vehicle; (3) UUWF (*id.* § 24-1.1(a), (e)) for knowingly possessing a firearm after previously being convicted of a felony offense; (4) unlawful possession of a firearm by a street gang member (*id.* § 24-1.8(a)(1), (b)) for knowingly possessing a firearm as a member of a street gang; and (5) AUUW (*id.* § 24-1.6(a)(1), (a)(3)(A-5), (a)(3)(C), (d)(3)) for knowingly and unlawfully possessing an uncased, loaded firearm.

¶ 5        The case proceeded to a bench trial on February 10, 2023. The evidence at trial established that on the morning of August 21, 2021, Bismark Galeana went out to the parking lot of his apartment to work on his car. Later in the morning, he saw three individuals, including defendant, standing in the parking lot. As a car passed, the individuals began throwing bottles at the car. The car returned approximately five minutes later. Defendant then shot a gun toward the car and ran into a building. Surveillance cameras captured the incident. Officers were dispatched to a call of shots fired. Officers heard a loud hissing sound coming from a vehicle. The sound

was coming from a hole in the rear driver's side tire. Upon further inspection of the vehicle, the officers discovered a defect below the rear window that looked like a bullet hole. The officers found six spent shell casings in the area. The State admitted certified copies of defendant's two previous felony convictions, which included a 2009 conviction for AUUW. The court found defendant guilty of AHC, UUWF, and one count of aggravated discharge of a firearm and not guilty of the remaining charges.

¶ 6        A sentencing hearing was held on May 8, 2023. During the hearing, the State called an officer to discuss the facts of defendant's 2009 AUUW conviction. Ultimately, the court sentenced defendant to 20 years' imprisonment for both AHC and UUWF and 14 years' imprisonment for aggravated discharged of a firearm, to be served concurrently. In doing so, the court noted that defendant had been twice convicted of AUUW. The court referenced defendant's AUUW convictions multiple times in declaring the sentence.

¶ 7                                    II. ANALYSIS

¶ 8        On appeal, defendant argues (1) his conviction for AHC should be vacated where it was based on a void *ab initio* conviction for AUUW; (2) he must be resentenced as the court placed significant emphasis on his void AUUW conviction; (3) his convictions for UUWF, aggravated discharge of a firearm, and AHC violated the one-act, one-crime doctrine; and (4) the UUWF and AHC statutes are facially unconstitutional under both the United States and Illinois Constitutions. We will consider each argument in turn.

¶ 9                              A. Void AUUW Conviction

¶ 10       Defendant first argues that his conviction for AHC is improper where it was based on a conviction for AUUW that our supreme court found unconstitutional in *People v. Aguilar*, 2013 IL 112116, and *People v. Burns*, 2015 IL 117387. The State agrees and confesses error. At the

3

outset, we note that defendant did not raise this issue in the circuit court. However, "[v]oidness challenges are not subject to forfeiture or any other procedural bar, and such challenges may be raised at any time in any court." (Internal quotation marks omitted.) *People v. Matthews*, 2022 IL App (4th) 210752, ¶ 24.

¶ 11    In *Aguilar*, our supreme court "held that section 24-1.6(a)(1), (a)(3)(A), (d) of the Criminal Code of 1961 (720 ILCS 5/24-1.6(a)(1), (a)(3)(A), (d) (West 2008)), specifically the offense of aggravated unlawful use of a weapon, was unconstitutional on its face under the second amendment to the United States Constitution." *In re N.G.*, 2018 IL 121939, ¶ 32. When a statute is found to be facially unconstitutional, it is void *ab initio* and any prior conviction under such a statute cannot be given any further effect. *Id.* ¶¶ 33, 36.

¶ 12    Our review of the certified copy of defendant's 2009 AUUW conviction shows that it was pursuant to this unconstitutional statute. Therefore, defendant's prior conviction for AUUW is void. In order to be convicted of AHC, the State had to prove that defendant had two or more convictions. See 720 ILCS 5/24-1.7(a) (West 2022). One of the two prior convictions the State proffered was defendant's void conviction for AUUW. However, an unconstitutional AUUW conviction may not be used as a predicate offense for AHC. *People v. Cavette*, 2018 IL App (4th) 150910, ¶ 26. Therefore, we accept the State's concession and vacate defendant's AHC conviction and 2009 AUUW conviction. See *N.G.*, 2018 IL 121939, ¶ 57 ("if the constitutional infirmity is put in issue during a proceeding that is pending before a court, the court has an independent duty to vacate the void judgment and may do so *sua sponte*").

¶ 13                                B. Sentencing

¶ 14　　　　Defendant next contends that his sentences should be vacated, and the case remanded for a new sentencing hearing because the court placed significant emphasis on his void AUUW conviction. The State confesses error.

¶ 15　　　　"[A] void prior conviction is incompetent evidence at sentencing." *People v. Bridges*, 2020 IL App (1st) 170129, ¶ 38. However, "such a sentence may be affirmed in some circumstances—namely, if the record reflects that the sentencing court's reliance on the void conviction was so insignificant that it did not result in a greater sentence." *Matthews*, 2022 IL App (4th) 210752, ¶ 56; see also *People v. Alexander*, 2019 IL App (3d) 170168, ¶ 40 (remanding for resentencing because it was "unclear how the court considered the AUUW conviction during sentencing").

¶ 16　　　　Here, as stated above (*supra* ¶ 12) defendant's 2009 AUUW conviction was void, and, thus, it could not be used as evidence at sentencing. The record shows that both the State and the court relied on the invalid conviction—with the State calling a witness to discuss the facts of the prior case and the court discussing the conviction multiple times. We cannot say that the court's "reliance on the void conviction was so insignificant that it did not result in a greater sentence." *Matthews*, 2022 IL App (4th) 210752, ¶ 56. Therefore, we accept the State's concession, vacate defendant's sentences, and remand for a new sentencing hearing.[1]

¶ 17　　　　　　　　　　　　　　　　C. One-Act, One-Crime

¶ 18　　　　Third, defendant contends that his convictions for AHC, UUWF, and aggravated discharge of a firearm violate the one-act, one-crime doctrine where they were based on the same

---

[1]We note that defendant raises a second argument for resentencing. Based on our decision, we need not consider this alternate claim.

physical act. As we have already vacated defendant's AHC conviction, we need only consider the two remaining convictions.

¶ 19    At the outset, we note that defendant forfeited review of this issue by failing to raise it in the circuit court. However, our supreme court has held that "forfeited one-act, one-crime arguments are properly reviewed under the second prong of the plain-error rule because they implicate the integrity of the judicial process." *People v. Nunez*, 236 Ill. 2d 488, 493 (2010).

¶ 20    The one-act, one-crime doctrine provides "that a criminal defendant may not be convicted of multiple offenses when those offenses are all based on precisely the same physical act." *People v. Coats*, 2018 IL 121926, ¶ 11. We consider *de novo* whether a violation of the rule has occurred. *Id.* ¶ 12. In making such a determination, we use a two-step analysis. *Id.* We first determine whether the defendant committed a single physical act or multiple, separate acts. *Id.* If we determine that the defendant committed multiple acts, we then decide whether any of the offenses are lesser included. *Id.* If not, both convictions can stand. *Id.*

¶ 21    Thus, we must first determine whether defendant's conduct consisted of separate physical acts or a single physical act. Defendant argues that his convictions for UUWF and aggravated discharge of a firearm were carved from the same physical act of possessing a firearm. We disagree.

¶ 22    An act is "any overt or outward manifestation which will support a different offense." *People v. King*, 66 Ill. 2d 551, 566 (1977).

> "Although defendant is correct that both offenses shared the common act of possessing the handgun, under the definition outlined in King, [a] person can be guilty of two offenses when a common act is part of both offenses [citations] or

6

part of one offense and the only act of the other offense." (Internal quotation marks omitted.) *Coats*, 2018 IL 121926, ¶ 15.

¶ 23     As charged, defendant was convicted of aggravated discharge of a firearm for "[d]ischarg[ing] a firearm in the direction of another person or in the direction of a vehicle he or she knows or reasonably should know to be occupied by a person[.]" 720 ILCS 5/24-1.2(a)(2) (West 2022). Likewise, he was convicted of UUWF for "knowingly possess[ing] on or about his person *** any firearm *** [after having] been convicted of a felony." *Id.* § 24-1.1(a). While both of these convictions share the common requirement that defendant possess a firearm, his aggravated discharge of a firearm conviction required the additional act of defendant actually firing the firearm. Therefore, as aggravated discharge of a firearm required an additional element, we conclude that the two convictions did not result from precisely the same physical act. See *People v. Rodriguez*, 169 Ill. 2d 183, 188-89 (1996); *Coats*, 2018 IL 121926, ¶ 16 ("holding that multiple convictions for residential burglary and home invasion were proper because, despite the one act of entry into the victim's home which served as the basis for both convictions, the home invasion offense involved an additional act of intentional injury and, therefore, the two offenses were not carved from precisely the same physical act" (citing *People v. Lobdell*, 121 Ill. App. 3d 248, 252 (1983)); *People v. White*, 311 Ill. App. 3d 374, 385 (2000).[2]

¶ 24     While the second step is to determine whether any of the offenses are lesser-included offenses, defendant does not make any argument that one offense is the lesser-included offense of the other. Therefore, he has forfeited such contention, and both convictions stand. See Ill. S.

_____

[2]We note that in *Coats*, 2018 IL 121926, ¶ 27, the supreme court indicated that a defendant's status as a felon was not a separate act, as it was found to be in *White*. Nonetheless, the court found that *White* was correctly decided as armed violence and unlawful possession of a weapon by a felon were based on separate acts.

Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.").

¶ 25 In coming to this conclusion, we reject defendant's reliance on *People v. Glenn*, 363 Ill. App. 3d 170, 176 (2006), which held that the defendant could not be convicted of both unlawful possession and unlawful delivery of cocaine. *Glenn* has little applicability after the supreme court's holding in *Coats*. *Glenn* stated that both convictions were based on the same cocaine. *Id.* However, *Coats* rejected the argument that where the "crux" or "essence" of the crime are the same, multiple convictions cannot stand. *Coats*, 2018 IL 121926, ¶¶ 18-20.

¶ 26                                   D. Constitutionality

¶ 27 Lastly, defendant argues that the UUWF and AHC statutes he was convicted under are facially unconstitutional under both the United States and Illinois Constitutions. Specifically, defendant challenges the lifetime prohibition of possessing a weapon for felons. Initially, we note that we have already vacated defendant's AHC conviction. *Supra* ¶ 12. We reach constitutional issues "only as a last resort," and we analyze such questions only insofar as they are strictly necessary to decide a case. *In re E.H.*, 224 Ill. 2d 172, 178 (2006). Therefore, we need not consider the constitutionality of the AHC statute and solely focus on the UUWF statute (720 ILCS 5/24-1.1(a) (West 2022)).

¶ 28 All statutes are presumed constitutional and must be construed to uphold this presumption when possible. *People v. Wells*, 2023 IL App (3d) 210292, ¶ 19. A facial challenge to a statute can only overcome this presumption by showing that the statute is unconstitutional under any set of circumstances. *People v. Hilliard*, 2023 IL 128186, ¶ 21. We review *de novo* the constitutionality of a statute. *People v. McKown*, 2022 IL 127683, ¶ 29.

8

¶ 29       In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 26-27 (2022), the United States Supreme Court set forth a two-pronged analysis for evaluating the constitutionality of statutory firearm regulations. First, we must determine whether the conduct at issue is protected under the plain text of the second amendment. *Id.* If so, we then consider whether the regulation justifiably comports with history and tradition. *Id.*; *People v. Travis*, 2024 IL App (3d) 230113, ¶ 24.

¶ 30       Applying this framework, we recently upheld the constitutionality of the same UUWF statute defendant was convicted under. *Travis*, 2024 IL App (3d) 230113, ¶¶ 25, 33. In *Travis*, we resolved *Bruen*'s first step by concluding that disarming felons falls within the plain text of the second amendment. *Id.* ¶ 25. The amendment's plain language guaranteeing the "right of the people to keep and bear Arms" covers the possession of firearms and does not exclude felons from "the people" to whom it applies. U.S. Const., amend II; *Travis*, 2024 IL App (3d) 230113, ¶ 25.

¶ 31       Considering *Bruen*'s second prong, our historical analysis in *Travis* demonstrated that the UUWF statute is consistent with this country's history and tradition of disarming individuals that violate the law or are deemed dangerous. *Travis*, 2024 IL App (3d) 230113, ¶¶ 27-33. The twentieth century laws prohibiting felons from possessing firearms evolved from comparable status-based restrictions dating back to the founding era. *Id.* ¶¶ 28-31. *Bruen*'s historical inquiry only requires that the challenged regulation have "a well-established and representative historical *analogue*, not a historical *twin*." (Emphases in original.) *Bruen*, 597 U.S. at 30. Analogous modern and historical regulations are determined by their relative similarities, which include, *inter alia*, " 'how and why the regulations burden a law-abiding citizen's right to armed self-defense.' " *Travis*, 2024 IL App (3d) 230113, ¶ 24 (quoting *Bruen*, 597 U.S. at 29). The

9

disarmament of felons based on their criminal convictions is consistent with a longstanding history and tradition of similar firearm prohibitions disarming individuals that engaged in criminal conduct or posed a danger to society. *Id.* ¶¶ 29-31. Like its historical antecedents, the UUWF statute imposes practically no burden on the second amendment rights of law-abiding citizens. *Id.* ¶ 33.

¶ 32        While defendant contends that these historical predecessors cannot provide a proper analogue for the permanent disarmament of felons, the UUWF statute does not provide an indissoluble ban as a felon has the opportunity to be exempt from its provisions by successfully obtaining relief under section 10 of the Firearm Owners Identification Card Act (430 ILCS 65/10 (West 2022)). See 720 ILCS 5/24-1.1(a) (West 2022).

¶ 33        Defendant further contends the UUWF statute is facially invalid under article I, section 22 of the Illinois Constitution. As discussed in *Travis*, we reject defendant's claim that by extending the right to bear arms to "the individual citizen" the Illinois Constitution provides greater protection than the right granted to "the people" under the second amendment. *Travis*, 2024 IL App (3d) 230113, ¶ 42. While the use of the phrase "individual citizen" broadens the scope of the type of arms covered by expanding it beyond weapons only traditionally used by a regulated militia (*id.* ¶ 40), article I, section 22 also provides the state with an immense degree of control over firearms by explicitly limiting the right to bear arms subject to the police power. Ill. Const. 1970, art. I, § 22. The disarmament of felons under the UUWF statute is a proper exercise of this power, which contemplates legislation intended to prohibit or restrict anything that presents a danger to the welfare of the people. *Travis*, 2024 IL App (3d) 230113, ¶¶ 41, 43.

¶ 34 Accordingly, we adopt *Travis* here and find that the UUWF statute is facially constitutional under both the United States and Illinois Constitutions.[3]

¶ 35                                    III. CONCLUSION

¶ 36 The judgment of the circuit court of Du Page County is affirmed in part, vacated in part, and remanded.

¶ 37 Affirmed in part and vacated in part.

¶ 38 Cause remanded.

---

[3]We note that during the pendency of this appeal, the United States Supreme Court issued a decision in *United States v. Rahimi*, 602 U.S. ___, 144 S. Ct. 1889 (2024), in which it upheld a federal statute that prohibited individuals subject to a domestic violence restraining order from possessing a firearm. After reviewing *Rahimi* and the parties' related supplemental briefs, we find that decision does not change the above analysis.