2024 IL App (1st) 200460-U

SIXTH DIVISION
May 24, 2024

No. 1-20-0460

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF

ILLINOISFIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CR 06676 |
| | ) | |
| MARQUISE BELL, | ) | Honorable |
| | ) | Thomas Joseph Hennelly, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE TAILOR delivered the judgment of the court.
Presiding Justice Oden Johnson concurred in the judgment.
Justice Hyman specially concurred.

**ORDER**

¶ 1     *Held*: The State failed to prove defendant guilty beyond a reasonable doubt.

¶ 2     Following a bench trial, defendant Marquise Bell was convicted of unlawful possession of a weapon by a felon (UPWF) and sentenced to five years' imprisonment. On appeal, Bell argues: (1) the UPWF statute is unconstitutional both facially and as applied, under *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2002); (2) the State failed to prove him guilty beyond a reasonable doubt; (3) he was denied his right to a fair trial and an opportunity to

present a complete defense; and (4) he received ineffective assistance of counsel. We agree the State failed to prove Bell guilty beyond a reasonable doubt and, therefore, reverse.

¶ 3                                    BACKGROUND

¶ 4     At trial, Chicago police officer Eljin Loeza testified that he and his partner, Officer Munoz were on patrol in an unmarked vehicle on the evening of April 21, 2021. Officer Loeza was driving the vehicle. At about 9 p.m., Officer Loeza observed Bell and two other males walking northbound on the east side of Perry Street near 71st street and Vincennes Avenue. As Officers Loeza and Munoz approached the three men, Bell looked in the direction of the officers, who were six to seven feet away. Bell appeared "startled" by the officer's presence. Officer Loeza stopped the car and Bell grabbed his waistband. Munoz opened the car door intending to conduct a field interview, but Bell fled. One of the males with Bell, also was holding his waistband, also fled. The third unidentified male continued to walk.

¶ 5     Officer Loeza testified that he exited his vehicle and ran behind Bell. Bell ran northbound for about two house and then went through an empty lot and ran eastbound. When Bell reached the empty lot, Officer Loeza, who was 15 feet behind Bell, observed "[Bell] with his left hand grab an object from his waistband and toss it." Officer Loeza "heard a thud, double thud" when the object hit a "surface." Officer Loeza could not tell what the object was but described it as "dark." Bell then ran southbound through the alley. Officer Loeza did not continue the foot chase and lost sight of Bell at this point. Officer Loeza stated that he wanted to stay in the area where he saw Bell toss the object.

¶ 6     Officer Loeza stated that he remained in the area after losing sight of Bell and used a flashlight to look for the object because it was nighttime. About three minutes later Officer Loeza recovered a loaded, 9 mm semi-automatic firearm. The firearm was found in the gangway of a

2

house just north of the empty lot about 10 feet away from where Bell had been running. There were no other metal objects found in that area. Officer Loeza testified that Bell was detained by Officer Leon Howard a couple of houses away from the lot, in the alley, a short time after Officer Loeza lost sight of him.

¶ 7    On cross-examination Officer Loeza testified that Bell ran through the lot and southbound in the alley and the other man ran through the lot and northbound in the alley. Loeza said that the handgun he found was about "ten feet or so" away from the "path [Bell] took" north of the empty lot.

¶ 8    Officer Loeza testified that he "just saw a hand go up" but could not say whether it was Bell's right or left hand, and that he did not see the direction in which Bell threw the object. The object could have gone in any direction. Officer Loeza heard "a couple of clunks" but "couldn't determine exactly where it was coming from" because he had his eyes focused forward on Bell. Officer Loeza admitted that Bell had a bottle in his hand at the time.

¶ 9    The firearm Officer Loeza recovered was discovered in the north end of the lot. The lot was about 25 to 30 feet in width. After that firearm was recovered, he looked for an additional firearm "from the other offender or possibly the defendant had another weapon." The defense played Officer Loeza's body worn camera in court. The video from the camera was very dark and it was difficult to see anyone on the video. The bodycam video is not part of the record on appeal. The State rested.

¶ 10    Bell called Officer Howard to testify. Officer Howard testified that he was on duty on April 21, 2019, at 9 p.m., with his partner Officer Steven Nisivaco. He observed three males walking in the vicinity of 71st and Vincennes. Officer Howard, who travelled in a vehicle behind Officer Loeza and Munoz, observed Officer Loeza and Munoz make a "street stop." Two of the

men fled through a lot and the other man stayed on street. Officers Loeza and Munoz gave chase and Officer Howard and his partner, acting as back up, went in the opposite direction around the alley and apprehended Bell.

¶ 11    When Officer Howard apprehended Bell, his partner, Officer Nisivaco, believed that Bell was holding a gun in his hand. However, what Officer Nisivaco believed to be a gun was actually a beverage bottle. After Bell was detained, Officer Howard met up with Officer Loeza, who told him that a weapon had been recovered but officers were still looking for another weapon. Officer Loeza told Officer Howard that two people had run through the lot and that the other unidentified person ran in the opposite direction of Bell. When Officer Howard's body worn camera was played in court Officer Howard acknowledged saying on the audio portion, "so if [Bell] was in the lot we'll put it on him."

¶ 12    On cross-examination Officer Howard testified that he never saw Bell run through the lot and that he did not run through the lot, either. Bell was detained by Officer Howard within minutes of fleeing from Officer Loeza. Officer Howard did not see Bell or anyone else discard anything.

¶ 13    Bell testified that he was walking with two friends when he noticed police behind them. The first police pulled up near the curb and an officer started to get out of the car. He and his friend James ran. "The third guy stay[ed] right there." Bell and James ran through the same lot and then went different ways. James was running straight and then he went left. Bell went right and was on the right side of the lot. Bell testified that he did not toss anything and was not holding or carrying a gun.

¶ 14    On cross-examination Bell testified that he ran because he thought he had a violation of parole warrant. Bell did not know the name of his friend who did not run. Bell never saw James

throw anything when they ran through the lot.

¶ 15    Bell rested. The State entered Bell's certified conviction for armed robbery into evidence. The court found Bell guilty concluding that "there's no question that a gun was recovered in that vacant lot that night and there's also no question that Mr. Bell ran, along with his confederate, through that lot."

¶ 16    Bell filed a motion reconsider the judgment alleging that the State did not prove him guilty beyond a reasonable doubt; that the finding was against the weight of the evidence; that he was denied due process and equal protection; the State failed to prove every material allegation; the court erred in giving instructions on behalf of the State over an objection; he did not receive a fair and impartial trial; the court erred in denying his motion for a directed verdict; and the finding of guilt was based upon evidentiary facts that did not exclude every reasonable hypothesis. An amended motion was subsequently filed that added transcripts pertaining to the testimony of Officer Loeza and Officer Howard. After reviewing the record, the court found that nothing required it to change its judgment and denied Bell's motion to reconsider. Bell was then sentenced to five years' imprisonment.

¶ 17    Bell now appeals.

¶ 18                                ANALYSIS

¶ 19    Bell argues that the State failed to prove him guilty beyond a reasonable doubt. Specifically, Bell argues that the State's entire case rested on Officer Loeza's testimony that he found a firearm north of a vacant lot, and that he saw Bell toss an unknown object during a night-time chase through that lot. Bell claims that Officer Loeza's testimony showed that James also ran through the north side of the empty lot near where the gun was found, while Bell ran through the south side of the lot. Bell urges that because the police never apprehended James, the officers

"put [the firearm] on" Bell.

¶ 20    When reviewing the sufficiency of the evidence, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). The credibility of the witnesses, the weight to be given their testimony, and the resolution of any conflicts in the evidence are within the province of the trier of fact, and a reviewing court will not substitute its judgment for that of the trier of fact on these matters. *People v. Brooks*, 187 Ill. 2d 91, 131 (1999). The testimony of a single witness, if positive and credible, is sufficient to convict. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). Reversal is justified only where the evidence is "so unsatisfactory, improbable or implausible" that it raises a reasonable doubt as to the defendant's guilt. *People v. Slim*, 127 Ill. 2d 302, 307 (1989).

¶ 21    To sustain a conviction for unlawful possession of a weapon by a felon, the State must prove defendant (1) knowingly possessed a weapon, and (2) was previously convicted of a felony. 720 ILCS 5/24-1.1(a) (West 2020). When a defendant is not found in actual possession of a weapon, the State must prove constructive possession. *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17. To establish constructive possession, the State must prove beyond a reasonable doubt that a defendant (1) knew a firearm was present; and (2) exercised immediate and exclusive control over the area where the firearm was found. *Id.* The State may establish knowledge through evidence of a defendant's acts, declarations, or conduct, from which it may be inferred that he knew of the firearm's presence. *People v. Beverly*, 278 Ill. App. 3d 794, 798, (1996). A defendant's control over the location where a weapon is found gives rise to an inference that he possesses that weapon. *Spencer*, 2012 IL App (1st) 102094, ¶ 17.

6

¶ 22    The State relies on *People v. Jones*, 2019 IL App (1st) 170478, *People v. Anderson*, 2018 IL App (4th) 160037, and *People v. Brown*, 362 Ill. App. 3d 374 (2005), in support its claim that Bell was proven guilty of UPWF beyond a reasonable doubt. In *Jones*, 2019 IL App (1st) 170478, ¶2, police officers responded to a call of a person with a firearm. When they arrived at the location, they saw the defendant, who matched the description of the alleged offender, walking down the sidewalk. When the officers exited their vehicle and shouted "hey" to the defendant, he ran. The officers gave chase and Officer Garcia saw the defendant's hand "come up towards his waistband area at which time I observed his left hand * * * toss a[n] unknown black object that made a metallic noise" when it hit the ground. The officer could not see what the black object was, but said it made a "[l]ike a clunking noise." *Id*. ¶5. After the defendant was detained, Officer Garcia informed the other officers that while he was chasing the defendant, he saw the defendant discard an item that made a metallic noise when it hit the ground. The officers found a semiautomatic pistol on the ground near where Garcia had seen the defendant discard the unknown object. Garcia said the firearm was spotted by Catalano within "seconds" of defendant's detention.

¶ 23    After he was Mirandized at the police station, the defendant informed Officer Garcia that he ran because he picked up a firearm he saw on the ground earlier and did not want to get caught with it.  *Id*. ¶ 7. We found "the evidence sufficient to show defendant was in actual possession of a firearm. Defendant told Garcia at the police station that he picked a gun up from the ground and ran from police because he did not want to get caught with it, thus establishing his possession of a firearm." *Id*. ¶ 28.

¶ 24    In *Anderson*, 2018 IL App (4th) 160037, ¶ 4, police officers observed three males walking in the middle of a street at approximately 11:30 p.m. One of the officers asked the

defendant to come toward him but the defendant fled on foot in the opposite direction. Both officers gave chase and were able to take the defendant into custody after he fell over a brush pile in the backyard of a nearby residence. Officers found a black Glock 27 handgun lying approximately two to three feet in front of the defendant. In defendant's right pocket, officers found seven bags of cannabis and a separate bag containing nine individually packaged bags of suspected crack cocaine. We found the State proved the defendant guilty of UPWF and possession of a controlled substance beyond a reasonable doubt. *Id.* ¶ 89.

¶ 25    In *Brown*, 362 Ill. App. 3d at 375-76, police officers observed the defendant shooting from his black Lexus at a group of people standing in front of a lounge. The officers pursued the Lexus and saw a silver object tossed from the passenger window of the Lexus. The officers alerted dispatch that something, possibly a gun, had been ejected from the Lexus. Another officer had joined in the pursuit of the Lexus and also saw the silver object being thrown from the passenger side. That officer pulled over and retrieved the object that turned out to be a chrome-colored semi-automatic weapon. When the defendant stopped, officers were able to remove him from the vehicle. The defendant was the sole occupant.  Inside, officers observed spent shell casings. While the defendant was being detained, another car pulled up and a passenger yelled at the defendant and pointed to him as the person who had shot him in front of the lounge.  *Id.* at 376. The defendant was convicted of unlawful use of a weapon, two counts of aggravated unlawful use of a weapon, and attempting fleeing or attempting to elude a peace officer.  *Id.*

¶ 26    The defendant appealed, arguing that the State failed to prove beyond a reasonable doubt that he was armed with the gun while he was committing the offense of aggravating fleeing because he had thrown the gun out of the window before he was arrested. *Id.* at 375. We affirmed his conviction, noting that the evidence was clear that "although [the defendant] did

throw the loaded handgun away before he stopped and was arrested, he had it in his immediate possession and control while he was fleeing from police *** after being given the signals to stop." *Id*. at 381.

¶ 27     The cases cited by the State are factually distinguishable from the instant case. In the cases cited by the State, the defendant's possession of a weapon was established beyond a reasonable doubt. In *Jones*, the defendant admitted he had found a gun and picked it up.  In *Anderson*, the gun was found two or three feet from the defendant after he tripped while being chased. In *Brown*, the officers recovered the gun that they saw the defendant throw out of his passenger side window. In this case, there was no evidence that Bell ever possessed a weapon, actually or constructively.

¶ 28     Viewing the evidence in the light most favorable to the State, we find that the State failed to prove Bell guilty of UPWF beyond a reasonable doubt. There was no evidence that Officer Loeza, or anyone else, saw Bell with a firearm at any time. Although Officer Loeza testified that he saw Bell touch his waistband before he fled, Officer Loeza never testified that he saw a gun or the outline of a gun. Officer Loeza simply testified that as he was chasing Bell, he saw Bell "grab an object from his waistband and toss it," but did not know what that object was because it was dark and he was 15 feet behind Bell. Officer Loeza only described the object as "dark." Officer Loeza acknowledged that Bell had a beverage bottle in his hand at the time. And what Officer Nisivaco believed to be a gun was actually a beverage bottle. Officer Loeza stated that while he was running, he heard an object hit the ground but could not tell from which direction the sound came. Officer Loeza testified that he chased both Bell and James as they ran northbound and then eastbound through the empty lot. When they reached the alley, Bell went south and James went north. Officer Loeza and Bell both testified that James ran on the north side of the lot, and

9

that Bell was on the south side of the lot. The gun was found in "the gangway of the houses next to the empty lot, just north of the empty lot." Considering Officer Howard's statement to Officer Loeza on the bodycam video at the scene, that because Bell "was in the lot, we'll put it on him," clearly even the officers were not convinced that the gun they recovered had been in Bell's possession. It could just as well have been in James's possession on this record. Or it could have been in neither Bell nor James's possession. The evidence admits only of speculation.

¶ 29    Accordingly, we find that the evidence in this case was insufficient to convict Bell of UPWF and reverse his conviction. Therefore, we need not address Bell's remaining claims. *In re E.H.*, 224 Ill. 2d 172, 180 (2006) (the appellate court has a duty to avoid constitutional questions when a case can be decided on other grounds).

¶ 30                                          CONCLUSION

¶ 31    For the reasons stated, the judgment of the circuit court is reversed.

¶ 32    Reversed.

¶ 33    JUSTICE HYMAN, specially concurring:

¶ 34    Officer Howard's statement at the scene that Bell "was in the lot, we'll put it on him" brings to mind the iconic movie line, "Round up the usual suspects." Both are a reckless shortcut to investigation and legitimate suspicions. In view of the scant evidence presented at trial and Officer Howard's statement, one wonders why this case was prosecuted. That Bell and others ran from the police is not unusual, and alone does not give law enforcement a basis to "put it on him." See *People v. Bloxton*, 2020 IL App (lst) 181216 ¶ 21 (avoiding approaching officer, on its own, does not amount to probable cause or even reasonable suspicion).