2025 IL App (1st) 231348-U

SECOND DIVISION
March 18, 2025

No. 1-23-1348

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CR 7818 |
| | ) | |
| DESHUN MCGEE, | ) | Honorable |
| | ) | Ursula Walowski, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

ORDER

¶ 1    *Held*: We affirm the circuit court's judgment. The State presented sufficient evidence to find the defendant possessed a firearm beyond a reasonable doubt. Defendant has failed to demonstrate that the unlawful possession of a weapon by a felon statute is unconstitutional under either the U.S. or Illinois Constitutions.

¶ 2    Defendant appeals his conviction for the offense of unlawful possession of a weapon by a felon. Defendant argues that the State failed to prove his possession of the weapon beyond a reasonable doubt. Defendant further argues that the unlawful possession of a weapon by a felon statute (720 ILCS 5/24-1.1(a) (West 2022)) is unconstitutional under either the Second Amendment to the U.S. Constitution or under Article I Section 22 of the Illinois Constitution. We hold that the State introduced sufficient evidence to prove defendant's possession of the

weapon beyond a reasonable doubt and that the statute is not unconstitutional under the Second Amendment or the Illinois Constitution. Accordingly, we affirm.

¶ 3                                    BACKGROUND

¶ 4      The evidence introduced at trial established that, on June 14, 2022, a black Chrysler 200 was stolen in an aggravated vehicular hijacking by a group of people. About an hour after it was stolen, Illinois State Police troopers spotted a black Chrysler driving on a highway in Chicago. After running a check on the license plates and confirming the vehicle was the one that was stolen, the troopers began to follow the vehicle. The State Police activated their lights and sirens, and the driver of the stolen car failed to stop and then fled. Approximately seven Illinois State Police squad cars began a pursuit of the stolen vehicle. During the pursuit, the stolen vehicle was registering speeds in excess of 100 miles per hour. The vehicle was swerving across all lanes of the highway and using the shoulder of the road to weave through civilian traffic. After a police chase of approximately seven minutes, the stolen vehicle exited the highway and crashed into a civilian motorist at an intersection. Illinois State Police squad car cameras captured the pursuit.

¶ 5      After the stolen vehicle crashed, three occupants fled the vehicle on foot. One of the men fleeing the vehicle was defendant Deshun McGee. The troopers split off to chase the three individuals. Trooper Nicholas Whitbeck chased defendant in a foot pursuit. Trooper Whitbeck testified that, as defendant was running, defendant was grabbing for his waistband with his left hand. Whitbeck drew his service pistol and ordered defendant to stop running. Defendant did not comply, so the trooper reholstered his pistol and continued the pursuit. Defendant came to a fence and hopped over it. Whitbeck also jumped over the fence. Whitbeck then briefly lost sight of defendant. Officers from the Chicago Police Department (CPD) caught defendant nearby in the gangway of residential area and placed him into custody.

¶ 6    CPD officers had heard the radio transmissions about the stolen vehicle and the police chase. CPD Officers went to the location where the stolen vehicle exited the highway, and the officers arrived on scene just after the stolen vehicle crashed. When CPD Officers arrived on scene, Officer Dante Koeppen saw Trooper Whitbeck chasing defendant. Officer Koeppen observed that defendant was holding his waistband with his left hand during the pursuit while his right hand was moving freely. Officer Koeppen observed that defendant's left hand was holding his waistband in a manner consistent with someone who is concealing a firearm. After making those observations, Officer Koeppen joined Trooper Whitbeck in pursuing defendant.

¶ 7    Officer Koeppen followed defendant through a vacant lot and then observed defendant jump and stumble over a fence into an alleyway. Like Whitbeck, Koeppen briefly lost sight of defendant after clearing the fence and saw him again when he was caught by other officers nearby.

¶ 8    After defendant was detained, Trooper Whitbeck and CPD officers retraced the path of the foot pursuit. They discovered a firearm laying right by the fence that defendant jumped over while Whitbeck was in pursuit. The gun was recovered and inventoried. Koeppen accompanied Whitbeck to retrace to path of the foot pursuit and was the one to recover the firearm from the ground "directly to the left" of where he observed defendant stumble over the fence. Officer Koeppen was wearing a body camera at the time of the pursuit.

¶ 9    On cross-examination, Trooper Whitbeck conceded that he did not write in his field report that he observed defendant holding his waistband during the pursuit. Whitbeck also met with a detective around the time of the arrest and did not tell the detective defendant was holding his waistband during the pursuit. Officer Koeppen acknowledged that he never saw the gun in defendant's possession and did not see defendant throw anything during the foot chase. Koeppen

acknowledged that no contraband was found on defendant's person at the time he was taken into custody.

¶ 10    The trial court heard testimony of the above events and found defendant guilty of unlawful possession of a firearm by a felon. The trial court noted that the video from the officer's body-worn camera corroborated the police's description of the chase. The trial court highlighted that it observed on the video that the weapon was found "within an arm's length" of where defendant went over the fence. The trial court explained that it could be reasonably inferred from the evidence that defendant tossed the gun while running from the police. The trial court found, "based on the circumstances here[,] that this was [defendant's] gun" and found him guilty. Defendant filed a motion for a new trial which was denied. The trial court sentenced defendant to the minimum sentence of three years in prison. Defendant now appeals his conviction.

¶ 11                                    ANALYSIS

¶ 12    *I. Sufficiency of the Evidence*

¶ 13    Defendant was found guilty of unlawful possession of a weapon by a felon. See 720 ILCS 5/24-1.1 (West 2022). To prove defendant guilty of the relevant offense, the State had to submit evidence that: (1) defendant knowingly possessed a firearm; (2) after being convicted of a felony. *Id*. Defendant concedes he was previously convicted of a qualifying felony. He, however, argues that the State failed to prove beyond a reasonable doubt that he was "in possession" of the firearm that the officers recovered in this case.

¶ 14    The State must prove each element of an offense beyond a reasonable doubt. *People v. Sams*, 2013 IL App (1st) 121431, ¶ 9. In assessing whether the evidence against a defendant is sufficient to prove guilt beyond a reasonable doubt, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt. *People v. Taylor*, 186 Ill. 2d 439, 445 (1999).

¶ 15    It is not the reviewing court's function to retry the defendant. *People v. Ware*, 2019 IL App (1st) 160989, ¶ 45. The trier of fact assesses the credibility of the witnesses, determines the appropriate weight of the testimony and resolves conflicts or inconsistencies in the evidence. *People v. Johnson*, 2015 IL App (1st) 123249, ¶ 21. A reviewing court will not substitute its judgment for that of the trier of fact and will not reverse a conviction for insufficient evidence unless the evidence admitted is so unreasonable, improbable, or unsatisfactory that it raises a reasonable doubt of defendant's guilt. *People v. Betance–Lopez,* 2015 IL App (2d) 130521, ¶ 40. All reasonable inferences from the evidence must be drawn in favor of the prosecution. *People v. Newton*, 2018 IL 122958, ¶ 24.

¶ 16    Defendant argues that the State did not prove beyond a reasonable doubt that he possessed the recovered firearm. Defendant points out that neither of the State's two eyewitnesses ever affirmatively saw him with a gun nor did they see him drop or throw anything. No fingerprints, DNA, or inculpatory statements tied defendant to the firearm. Instead, according to defendant, he was found guilty of possessing a weapon that was found in a vacant lot that anyone could have accessed, and he was arrested hundreds of feet away from where the gun was recovered.

¶ 17    Defendant contends that the insufficiency of the evidence is highlighted by the fact that, during closing argument, the State argued to the trial court that the gun fell out of defendant's waistband when defendant stumbled over the fence during the pursuit. The State argued at trial that the gun was recovered from "exactly where [defendant] fell." On appeal, defendant contends that the gun was not recovered where he fell over the fence but instead was found in the back

corner of a sunken cavity on the property a "notable distance" away from the portion of the fence that defendant jumped. Defendant points out that the portion of the fence that was near where the gun was recovered was an area of the fence that could not be jumped. Defendant concludes that the area of the fence he climbed was "simply not close enough to where the gun was recovered" for it to have just fallen out while he went over the fence.

¶ 18    In finding defendant guilty, the trial court did not mention the portion of the State's closing argument where the State opined that the gun fell out of defendant's waistband during the pursuit. Instead, the trial court found that it was reasonable to infer that defendant tossed the gun away while he was fleeing the police. Defendant argues that the difference between the State's argument and the trial court's findings on this point is telling. Defendant contends that the trial court's finding cannot be reconciled with the evidence because neither officer testified that they observed defendant toss any object. Defendant argues that the trial court's assumption that he tossed the gun during the pursuit was not based on any testimony and is mere speculation which cannot sustain his conviction.

¶ 19    Defendant acknowledges that possession of a weapon may be proved by circumstantial evidence alone. He, however, argues that there was insufficient evidence introduced at trial to even circumstantially prove he was in possession of the recovered weapon. Defendant contends that there was no evidence to show that the weapon was not already there before defendant was in the area, as the gun was found in a vacant lot that could be accessed by anyone. He suggests that it is not enough that the officers testified he was holding his waistband during the pursuit because holding one's waistband is equally consistent with innocuous conduct like trying to hold up one's pants while running.

¶ 20    We find that the evidence was sufficient to prove defendant's possession of the firearm. Two different officers, one from the CPD and one from the State Police, testified they observed defendant was holding his waistband while running from the stolen vehicle. After Trooper Whitbeck saw defendant grabbing for his waist during the pursuit, the Trooper drew his service weapon and ordered defendant to stop fleeing. Officer Koeppen testified that while defendant was fleeing, he was holding his waistband in a manner consistent with someone who was concealing a firearm. Both officers testified they saw defendant going over the fence and they both lost sight of him momentarily until he was arrested by other officers a short time later. Whitbeck and Koeppen immediately set out to retrace the path of the foot pursuit where they found the weapon in plain view.

¶ 21    Despite defendant's contentions about discrepancies regarding the location in which the weapon was recovered, the testimony at trial is consistent with the bodycam video. In the video, Officer Koeppen shows the area where defendant went over the fence. The gun was located immediately adjacent to that spot and corroborates the officers' testimony. The trial court credited the officers' testimony. Defendant's hypothesis that the gun could have been put in the lot by someone else at some other time before defendant was present in that location is not very compelling as the gun was found out in the open and was directly in the path defendant had just taken during his flight from the officers. Whether the gun was accidentally dropped or intentionally discarded by defendant was not a matter that the State needed to prove. The firearm was found a very short distance from the spot defendant had just jumped over the fence during his flight from police after police had reason to believe defendant was concealing a firearm during the foot pursuit. Taking the evidence in the light most favorable to the State and drawing

all reasonable inferences in the State's favor, a rational trier of fact could have found defendant possessed the weapon beyond a reasonable doubt.

¶ 22    Defendant argues that *People v. Wright*, 2013 IL App (1st) 111803, is instructive. In *Wright*, the defendant was in his uncle's home when a search warrant was executed. *Id*. at ¶ 14. The police chased the defendant and another man down the stairs. *Id*. at ¶ 7. The men fell while running from the police. *Id*. The defendant landed on his stomach on the floor and the other man fell on top of him. *Id*. Under the defendant's body, the officers observed a gun. *Id*. at ¶ 12. The defendant did not own or live at the residence and none of the officers saw a gun in the defendant's hands or noticed him making any actions indicating he was discarding a gun. *Id*. at ¶ 20. We reversed the defendant's conviction, concluding that the mere presence of the gun under the defendant's body was insufficient to prove possession. *Id*. at ¶ 26.

¶ 23    In *Wright*, the State did not argue the defendant had actual possession of a gun. See *id*. at ¶ 21. Instead, the State argued for constructive possession based on the fact that the gun was recovered in such close proximity to the defendant when he was arrested. *Id*. In this case, however, the State has not attempted to prove that defendant constructively possessed a weapon, but rather that he actually possessed it. The State presented evidence that defendant had the gun in his waistband at the beginning of the foot pursuit before later dropping or discarding the gun. Moreover, in *Wright*, the only evidence of the defendant's alleged possession of the weapon was his proximity to the weapon when it was seen by police. Here, there is a far more detailed eyewitness account of defendant actually possessing a weapon that was later recovered from the exact path of his flight. We do not find *Wright* to be persuasive in support of defendant's arguments.

¶ 24    Defendant also points to *People v. Bell*, 2024 IL App (1st) 200460-U as supportive of his arguments on appeal. However, in *Bell*, we noted that "there was no evidence that Bell ever possessed a weapon, actually or constructively." *Id*. at ¶ 27. The officers in *Bell* encountered the defendant and another man in a vacant area who both fled. One officer said he saw defendant reach for his waistband and toss an object. *Id*. at ¶ 28. However, another officer admitted that the object he saw in the defendant's hand was a beverage bottle, not a gun. *Id*. The officers later found a gun in the lot, but there was no evidence defendant ever possessed it. The officers themselves were not convinced defendant ever possessed the gun and could be heard on the body-worn camera video saying that, "because [the defendant] 'was in the lot, we'll put it on him.' " *Id*. We recognized in *Bell* that the gun could have come from defendant, the other man, or neither, but the only possible link between the defendant and the gun was based on speculation. *Id*.

¶ 25    In this case, we do not have confusion or uncertainty on behalf of the eyewitness officers. Instead, the officers testified consistently that they saw defendant running while grabbing at his waistband in a manner consistent with a suspect concealing a weapon there. The officers, from different agencies, both testified that they believed defendant was fleeing from them while in possession of a gun and they quickly retraced the path of defendant's flight and discovered the gun as they expected. The officers' testimony was not impeached, contradicted, or otherwise called into question by the defense and, more importantly, was found to be credible by the trial court. The testimony was corroborated by the body camera video unlike in *Bell* where the body camera video disproved the link between the defendant and the weapon. The evidence in this case is superior, both quantitatively and qualitatively, to the evidence admitted in *Bell*.

¶ 26    Based on the foregoing, we find that the State presented sufficient evidence of defendant's possession of the weapon to sustain his conviction for unlawful possession of a weapon by a felon.

¶ 27    *II. Constitutionality of the Unlawful Possession of a Weapon by a Felon Statute*

¶ 28    Defendant argues that the statute under which he was convicted is unconstitutional. The unlawful possession of a weapon by a felon statute makes it a crime for a person who has previously been convicted of a felony to knowingly possess a firearm. 720 ILCS 5/24-1.1 (West 2022). Defendant argues that the statute is unconstitutional under the Second Amendment of the U.S. Constitution or under Article I, Section 22 of the Illinois Constitution.

¶ 29    A. Second Amendment Challenge

¶ 30    We first address defendant's argument that the unlawful possession of a weapon by a felon statute is facially unconstitutional under the Second Amendment. Illinois courts review a constitutional challenge to a statute or ordinance *de novo* because it presents a question of law. See *Caulkins v. Pritzker*, 2023 IL 129453, ¶ 28. In a facial challenge to the constitutionality of a statute, such as the challenge presented here, a court examines whether the statute or ordinance at issue contains "an inescapable flaw" that makes the statute "unconstitutional under every circumstance." *Accel Entertainment Gaming, LLC v. Village of Elmwood Park*, 2015 IL App (1st) 143822, ¶ 29. The burden of demonstrating a statute's unconstitutionality is on the party challenging the ordinance's validity, and the challenging party must clearly demonstrate a constitutional violation. *Blanchard v. Berrios*, 2016 IL 120315, ¶ 14.

¶ 31    The Second Amendment to the United States Constitution provides that "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed. U.S. Const. Amend. II (West 2020). In *New York State*

*Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), the Supreme Court of the United States set out the applicable test for determining whether a statute or regulation is compatible with the Second Amendment.

¶ 32    In *Bruen*, the Supreme Court held that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. *Id*. at 17. To justify a firearm regulation when the individual's conduct is protected, the government must demonstrate that the regulation is consistent with the Nation's historical tradition of firearm regulation. *Id*. The applicable test for scrutinizing a regulation under the Second Amendment "requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id*. at 26. If the regulated conduct is protected by the Second Amendment, the burden then falls to the government to show that the regulation of the protected conduct is "consistent with this Nation's historical tradition of firearm regulation." *Id*. at 33-34.

¶ 33    Defendant argues that, in Illinois, the unlawful possession of a weapon by a felon statute (720 ILCS 5/24-1.1(a) (West 2022)) bars any person convicted of a felony from possessing any firearm, for any purpose, for all time. He contends that the statute's text and its prohibitions implicate the Second Amendment, so the burden is on the government to demonstrate that the statute is consistent with the Nation's historical tradition of firearm regulation. Defendant argues that the test from *Bruen* "requires this Court to determine whether permanently banning a person with a history of felony convictions – a ban that carries criminal consequences – is 'consistent with the Second Amendment's text and historical understanding.' " (Quoting *Id.* at 26). According to defendant, "no firearm regulations from the historical periods that *Bruen* relied on

justify Section 24-1.1(a), which places a permanent ban on gun possession based on nothing more than the fact of a previous felony conviction."

¶ 34    Turning to the test set forth in *Bruen*, we must first determine whether the regulated conduct falls within the textual scope of the Second Amendment and, if so, we look to whether the government has met its burden of showing that the regulation is consistent with this Nation's historical tradition of firearm regulation. *Id*. at 17.

¶ 35    Under the Second Amendment, the right of "the people" to keep and bear Arms, shall not be infringed. U.S. Const. Amend. II (West 2022). Defendant contends that he is part of "the people" to whom the Second Amendment refers despite him being a convicted felon. Defendant relies on, among other sources, the Supreme Court's statement in *Heller* that there is "a strong presumption that the Second Amendment right is exercised individually and belongs to *all Americans*." (Quoting *D.C. v. Heller*, 554 U.S. 570, 581 (2008) (emphasis added)).

¶ 36    The State argues that the Second Amendment's protections do not extend to convicted felons like defendant and therefore defendant is not part of "the people" for purposes of the Second Amendment. The State also relies on, among other sources, the Supreme Court's statement in *Heller* that "nothing in [this] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms *by felons* and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." (Quoting *Heller*, 554 U.S. at 626-27 (emphasis added)).

¶ 37    In just the last few months, different circuit courts of the United States Court of Appeals have reached opposing conclusions when deciding whether Second Amendment protections extend to felons. In *United States v. Jackson*, 110 F.4th 1120, 1125 (8th Cir. 2024), the Eighth

Circuit Court of Appeals found that the Supreme Court has given repeated assurances that the longstanding laws prohibiting felons from possessing firearms pass constitutional muster. *Id*. The Eighth Circuit held that a categorical ban on felons possessing firearms was not unconstitutional. *Id*.; see also *United States v. Hunt*, 123 F.4th 697, 705 (4th Cir. 2024) (the right enshrined in the Second Amendment "protects firearms possession by the law-abiding, not by felons."). In *Range v. Attorney General United States*, No. 21-2835, 2024 WL 5199447, at \*\*3-5 (3d Cir. Dec. 23, 2024), however, the Third Circuit Court of Appeals reached the opposite conclusion. The Third Circuit "reject[ed] the Government's contention that felons are not among 'the people' protected by the Second Amendment." *Id*. at \*5 (internal quotation marks omitted).

¶ 38    The issue appears to be destined for Supreme Court review in the near future. Nevertheless, we find that the better reasoned decisions are those in which the courts have found prohibitions on felons possessing firearms are not unconstitutional under the Second Amendment. The Supreme Court's statement in *Heller* that it was not casting any doubt on the longstanding prohibition on the possession of firearms by felons is telling. The Supreme Court recently reiterated that position in *United States v. Rahimi*, 602 U.S. 680, 682 (2024) when it stated that "[i]ndeed, *Heller* stated that many such prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.' " We agree with the Fourth Circuit Court of Appeals that the possession of firearms by felons falls outside the scope of the Second Amendment right as originally understood. *Hunt*, 123 F.4th at 705.

¶ 39    Although the law is evolving rapidly in this area, Illinois courts have previously addressed this issue and found that the subject statute passes constitutional muster under the Second Amendment. In *People v. Baker*, 2023 IL App (1st) 220328, we explained that "[t]he *Bruen* Court could not have been more clear that its newly announced test applied only to laws

that attempted to regulate the gun possession of 'law-abiding citizens,' and not felons like defendant." *Baker*, 2023 IL App (1st) 220328, ¶ 37; see also *People v. Mobley*, 2023 IL App (1st) 221264, ¶ 28; *People v. Hatcher*, 2024 IL App (1st) 220455, ¶ 57; *People v. Kelley*, 2024 IL App (1st) 230569, ¶¶ 16-17; *People v. Gardner*, 2024 IL App (4th) 230443, ¶ 68. We conclude that defendant cannot show Second Amendment protection from the relevant statute and, thus, he has failed to demonstrate that the unlawful possession of a weapon by a felon statute is facially unconstitutional.

¶ 40     B. Illinois Constitution Challenge

¶ 41     Defendant argues that, even if the statute passes muster under the Second Amendment, the statute is unconstitutional under Article I Section 22 of the Illinois Constitution. Illinois courts review a constitutional challenge to a statute or ordinance *de novo* because it presents a question of law. *Caulkins*, 2023 IL 129453, ¶ 28. In a facial challenge to the constitutionality of a statute, such as the challenge presented here, a court examines whether the statute or ordinance at issue contains "an inescapable flaw" that makes the statute "unconstitutional under every circumstance." *Accel Entertainment*, 2015 IL App (1st) 143822, ¶ 29. The burden of demonstrating a statute's unconstitutionality is on the party challenging the ordinance's validity, and the challenging party must clearly demonstrate a constitutional violation. *Blanchard*, 2016 IL 120315, ¶ 14.

¶ 42     The Illinois Constitution provides that, "[s]ubject only to the police power, the right of the individual citizen to keep and bear arms shall not be infringed." Ill. Const. 1970, art. I, §22 (West 2022). Defendant argues that the Illinois Constitution provides greater protection than the Second Amendment as it expands the protection from "the people" to "the individual citizen." He suggests that "the people" in the U.S. Constitution speaks to a group while the Illinois

Constitution provides protection for individuals. Thus, according to defendant, "the text of the Illinois Constitution confers a broader, more explicit, and more specific personal right than does the Second Amendment."

¶ 43 We have addressed the same arguments defendant makes here in other cases. In addressing whether the Illinois Constitution forbids the General Assembly from passing a law prohibiting felons from possessing firearms, we have repeatedly answered the question in the negative. See *People v. Stephens*, 2024 IL App (5th) 220828, ¶¶ 40-45; *Kelly*, 2024 IL App (1st) 230569, ¶¶ 23-28; *People v. Travis*, 2024 IL App (3d) 230113, ¶¶ 38-44.

¶ 44 Our supreme court has explained that, in adding the prefatory phrase "subject only to the police power," the Illinois Constitution was intended to provide the State with an "extraordinary degree of control over the possession of firearms." *Kalodimos v. Village of Morton Grove*, 103 Ill. 2d 483, 491-92 (1984). We find no reason to depart from our consistent position on this issue, and we agree with the correctness of our previous holding that "the Illinois Constitution's prohibition of the possession of firearms by felons is a proper exercise of police power." *Stephens*, 2024 IL App (5th) 220828, ¶ 44.

¶ 45 As noted in the dissent in *Kalodimos*, the committee report for the 1970 Constitutional Convention states that "certain individuals, such as minors, incompetents and *convicted felons*, could be prohibited from possessing firearms" under the State's police power discussed in Art. I Sec. 22 of the constitution. *Kalodimos*, 103 Ill. 2d at 524 (Moran, J., dissenting) (citing Committee Report, 6 Proceedings 89) (emphasis added). The legislative purpose in enacting the unlawful possession of a weapon by a felon statute "was to protect the health and safety of the public by denying legal possession of firearms to certain classes of persons that the legislature determined presented a higher risk of danger to the public, and to themselves, when in

possession of a firearm." *Rawlings v. Illinois Department of Law Enforcement*, 73 Ill. App. 3d 267, 274 (1979). "We have no difficulty in finding that such a purpose is within the purview of the police power possessed by the legislature." *Id.*

¶ 46    Defendant maintains that the Illinois Constitution demands an individualized finding of dangerousness on a case by case basis before a citizen can be disarmed in this State. We do not believe the Illinois Constitution mandates such a finding or prohibits the legislature from enacting a law that categorically forbids convicted felons from possessing firearms. Defendant has failed to clearly demonstrate a constitutional violation (*Blanchard*, 2016 IL 120315, ¶ 14) or show that the challenged statute is unconstitutional under every circumstance (*Accel Entertainment*, 2015 IL App (1st) 143822, ¶ 29). As such, his challenges to the constitutionality of the statute must fail.

¶ 47                                    CONCLUSION

¶ 48    Accordingly, we affirm.

¶ 49    Affirmed.