2025 IL App (1st) 232111-U

No. 1-23-2111

Order filed December 17, 2025

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of Cook County, |
| Plaintiff-Appellee, | ) | Criminal Division. |
| | ) | |
| v. | ) | No. 21 CR 14687 |
| | ) | |
| JAVAR LLOYD, | ) | Honorable |
| | ) | Timothy Joseph Joyce, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE MITCHELL delivered the judgment of the court.
Justice Oden Johnson and Justice Tailor concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Defendant's convictions are affirmed where there was sufficient evidence for a rational jury to find defendant guilty beyond a reasonable doubt. The circuit court did not err in denying defendant's motion to suppress. The circuit court's jury instructions and admission of the cannabis into evidence did not constitute plain error. Defendant received effective assistance of counsel. Illinois's armed habitual criminal statute is facially constitutional and constitutional as applied to defendant.

¶ 2   Following a jury trial, defendant Javar Lloyd was convicted for a violation of Illinois's

armed habitual criminal statute under the Criminal Code of 2012 (720 ILCS 5/24-1.7(a) (West

2020)) and possession of cannabis in excess of 30 grams under the Cannabis Control Act (720

ILCS 550/4(c) (West 2020)). He was sentenced to consecutive terms of six years' imprisonment for the firearm offense and one year for the cannabis offense.

¶ 3     Defendant raises the following issues on appeal: (1) whether there was sufficient evidence for a rational jury to find that defendant unlawfully possessed a handgun where police purportedly saw defendant throw a handgun but the officers' body worn camera footage does not show him throw anything, the police did not recover fingerprints, and there were multiple people at the scene; (2) whether the circuit court erred in denying defendant's motion to suppress where the police seized defendant seconds after purportedly seeing him throw the handgun and placed him under arrest after learning that he did not have valid firearm identification; (3) whether the circuit court's statement to the jury that it could consider the stipulation to defendant's prior convictions as evidence constituted plain error because it invited the jury to draw a propensity inference; (4) whether the circuit court's denial of defendant's request for a pattern jury instruction on the limited use of other-crimes evidence constituted plain error because the instruction applied to the circumstances; (5) whether the circuit court's admission of the cannabis into evidence, despite gaps in the chain of custody, constituted plain error where the officer who recovered the cannabis from defendant and inventoried it at the police station did not testify; and (6) whether Illinois's armed habitual criminal statute is facially unconstitutional or unconstitutional as applied to defendant. For the following reasons, we affirm.

¶ 4                              I. BACKGROUND

¶ 5     Around midnight on November 7, 2021, police officers approached a "narcotics hotspot" in the 1200 block of West 73rd Place in Chicago and observed two men standing in the middle of the street talking to a person inside a black car parked along the curb. A white van was parked

immediately behind the black car. Officer Knudsen exited his vehicle and approached the scene. Officer Knudsen testified that he saw defendant walk away from the police, toward the rear of the parked white van, and discard an object on top of a bush. Officer Knudsen testified that he immediately walked toward the discarded object, identified it as a handgun, and instructed his partner, Officer Hecker, to detain defendant.

¶ 6      Defendant was holding a dark bag. Officer Hecker handcuffed and frisked defendant with the dark bag lying on the ground between defendant's feet. As Officer Hecker handcuffed and frisked defendant, Officer Knudsen asked defendant if he had a valid firearm owner's identification card, and defendant told the officers he did not have a FOID or concealed carry license. Officer Hecker then brought defendant inside the police car, and the officers took him to the station. Officer Knudsen testified that he observed Officer Hecker inventory the contents of the dark bag at the police station. The bag contained approximately 200 grams of cannabis.

¶ 7      After the circuit court denied defendant's motion to quash and suppress, the parties proceeded to a jury trial. At trial, the circuit court admitted the cannabis into evidence despite the fact that Officer Hecker—who recovered the cannabis from defendant and inventoried it at the police station—did not testify. Defense counsel did not object to its admission. The parties read a stipulation to the jury that defendant was previously convicted of qualifying offenses under the armed habitual criminal statute. The circuit court explained to the jury that a stipulation is evidence as if it had been testified to by a witness; defense counsel did not object. The jury found defendant guilty on both counts. After denying defendant's motion for a new trial, the circuit court sentenced defendant to the statutory minimum term of 6 years' imprisonment for the armed habitual criminal

offense consecutive to a 1-year term of imprisonment for the cannabis offense. This timely appeal followed. Ill. S. Ct. R. 606 (Sept. 18, 2023).

¶ 8                                    II. ANALYSIS

¶ 9                              A. Sufficiency of the Evidence

¶ 10    Defendant contends no rational jury could conclude he unlawfully possessed the handgun where Officer Knudsen's body worn camera footage does not show defendant throw anything. The State argues the body worn camera footage corroborates Officer Knudsen's testimony.

¶ 11    When reviewing a challenge to the sufficiency of the evidence, the question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The reviewing court does not retry the defendant. *People v. Jones*, 2023 IL 127810, ¶ 28. "All reasonable inferences from the evidence must be drawn in favor of the State." *Id.* A criminal conviction will be upheld "unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *Id.*

¶ 12    A person commits the offense of armed habitual criminal when he "receives, sells, possesses, or transfers any firearm after having been convicted a total of 2 or more" qualifying offenses. 720 ILCS 5/24-1.7(a) (West 2020). Defendant does not challenge the evidence of his prior convictions. Rather, he challenges whether there was sufficient evidence he possessed a firearm. Possession can be actual or constructive. *People v. McCurine*, 2019 IL App (1st) 160817, ¶ 21. At issue here, actual possession requires evidence that defendant "exercised some form of

4

dominion over the firearm, such as that he had it on his person, tried to conceal it, or was seen to discard it." *People v. Jones*, 2019 IL App (1st) 170478, ¶ 27.

¶ 13    Here, the evidence supported the verdict. Officer Knudsen testified that defendant walked away from the officers and avoided eye contact as they approached the scene. Officer Knudsen's body worn camera shows that as Officer Knudsen exited his vehicle, he observed defendant walk behind the van. Officer Knudsen immediately approached, walking along the curb side of the parked van. As Officer Knudsen approached the bush, he instructed his partner to detain defendant, who had walked to the other side of the van in the middle of the street. Officer Knudsen circled around the back of the van and asked defendant if he had valid firearm owner's identification as Officer Hecker handcuffed defendant; there is no audible response. Officer Knudsen put on rubber gloves, walked directly to the bush, and recovered the handgun. Against this backdrop, there was sufficient evidence for a rational jury to conclude that defendant possessed a firearm.

¶ 14    Defendant raises numerous arguments for why this evidence is insufficient, none of which are persuasive. First, defendant argues Officer Knudsen's testimony is not credible because (1) Officer Knudsen was standing 30 feet away when he purportedly observed the throw, (2) the street was dimly lit, (3) there was music playing and the handgun only weighs one or two pounds, so it is unlikely Officer Knudsen could have heard it fall, and (4) Officer Knudsen did not testify that he observed the handgun being thrown to the grand jury.

¶ 15    Here, even if true, none of these points directly contradict Officer Knudsen's testimony. Further, "[i]t is well settled that the determinations of witnesses' credibility and the weight given their testimony are exclusively within the province of the jury, and it is for the jury to resolve any conflicts in the evidence." *People v. Hill*, 2023 IL App (1st) 150396, ¶ 21 (citing *People v. Collins*,

106 Ill. 2d 237, 261-62 (1985)). Any impeachment of Officer Knudsen's testimony "goes to credibility and is for the jury, not this court, to weigh." *People v. Smith*, 253 Ill. App. 3d 443, 455 (1993). Here, the jury was in the best position to assess Officer Knudsen's credibility for themselves by observing the body worn camera, Officer Knudsen's demeanor as a witness, and defendant's impeachment inquiries.

¶ 16    Next, defendant argues that there were multiple people at the scene and the State did not recover fingerprints from the handgun. However, Officer Knudsen testified that he saw defendant throw an object and quickly determined it was a handgun. Although the video from Officer Knudsen's body worn camera does not show defendant throwing a gun, we also cannot say that it contradicts Officer Knudsen's testimony that he saw defendant throw a gun. There was a sedan between Officer Knudsen and defendant, but Officer Knudsen's line of sight was higher than the body worn camera, so it may not have been picked up by the camera because the car was in the way but could have been observed by Officer Knudsen, whose line of sight was over the sedan. On redirect, Officer Knudsen testified there have been instances where he witnessed what was not picked up on his body worn camera.

¶ 17    Finally, defendant argues the facts are analogous to *People v. Bell*, 2024 IL App (1st) 200460-U, ¶¶ 27-28, where the appellate court reversed a defendant's conviction at a bench trial for unlawful possession of a firearm that was based on an officer's unsubstantiated testimony that he had observed the defendant discard a handgun at night. There, police officers gave chase to two men who had fled across an empty lot and eventually ran in opposite directions when they reached the alley. *Id.* ¶¶ 5-7. During the chase, a police officer saw one of the suspects discard an object. *Id*. That officer stopped to search and recovered a handgun. *Id.* Simultaneously, another officer

circled around the alley and apprehended the defendant. *Id.* ¶¶ 6, 10. The appellate court reversed the conviction, explaining that the handgun could not be tied to the defendant based on the direction of the suspects' flight across the lot. *Id.* ¶ 28. Moreover, at the time of the defendant's apprehension in the alley, the officers were "clearly" "not convinced" that defendant had possessed the handgun. *Id.*

¶ 18    Here, Officer Knudsen testified that he saw defendant discard the handgun in the bush. It was not mere speculation as in *Bell*. In short, there was ample evidence from which the jury could find defendant possessed the handgun.

¶ 19                                B. Motion to Suppress

¶ 20    Defendant argues that because the police lacked probable cause to arrest him, the cannabis should have been suppressed as the fruit of an illegal search or seizure and the cannabis conviction should be reversed. U.S. Const., amend. IV. The State contends the police conducted a lawful investigatory stop and developed probable cause to arrest when they learned that defendant did not have a valid firearm identification card. Defendant did not raise the suppression issue in a motion for a new trial. See *People v. Cregan*, 2014 IL 113600, ¶ 15 ("To preserve an issue for review, a party ordinarily must raise it at trial and in a written posttrial motion."). Nevertheless, we review the circuit court's ruling on a constitutional issue on direct appeal to promote judicial economy. *Id.* ¶¶ 18-20.

¶ 21    On a motion to suppress evidence, the defendant carries the burden of proof to show that the search or seizure was unlawful. *People v. Brooks*, 2017 IL 121413, ¶ 22. We apply a two-part standard of review. *People v. Almond*, 2015 IL 113817, ¶ 55. We ask whether the circuit court's

factual determinations were "against the manifest weight of the evidence." *Id.* We review the ultimate legal conclusion *de novo*. *Id.*

¶ 22    Defendant argues for *de novo* review based on *People v. Cox*, 2023 IL App (1st) 170761, ¶ 42. In *Cox*, the appellate court explained that "[w]here a trial court's decision on a motion to suppress is based on video recordings of the defendant's confession and not on live testimony, *** the appropriate standard of review is *de novo* because we are reviewing the same evidence the trial court reviewed." (Internal quotation marks omitted.) *Id.* But, here, the trial court considered Officer Knudsen's live testimony in conjunction with the body worn camera to determine what Officer Knudsen observed in the moments before Officer Hecker detained defendant.

¶ 23    The United States Constitution and the Illinois Constitution of 1970 protect citizens from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. A warrantless search or seizure is *per se* unreasonable unless it falls within an exception to the warrant requirement. *People v. Drake*, 288 Ill. App. 3d 963, 964 (1997). There are two pertinent exceptions here: (1) a brief investigatory detention and frisk for weapons supported by reasonable articulable suspicion, and (2) a search incident to an arrest supported by probable cause. *People v. Luedemann*, 222 Ill. 2d 530, 544 (2006); *People v. Bridgewater*, 235 Ill. 2d 85, 93 (2009).

¶ 24    Under *Terry v. Ohio*, 392 U.S. 1 (1968), police may conduct "a brief investigatory stop, even in the absence of probable cause, *** when a totality of the circumstances reasonably lead the officer to conclude that criminal activity may be afoot and the subject is armed and dangerous." *People v. Colyar*, 2013 IL 111835, ¶ 32. In a suppression hearing, the police officer must be able to point to "specific and articulable facts" that gave rise to the reasonable suspicion. *Id.* ¶ 39. The level of suspicion must be "more than an inarticulate hunch." *Id.* ¶ 40. Further, if an officer has a

reasonable belief that the detainee is armed, the officer may conduct a frisk "limited to the minimum scope necessary to discover objects capable of being used as weapons" but not for the purpose of gathering evidence. *People v. White*, 2020 IL App (1st) 171814, ¶ 20.

¶ 25    In contrast, an arrest must be supported by probable cause. *People v. Robinson*, 167 Ill. 2d 397, 405 (1995). "Probable cause to arrest exists when facts exist that would lead a reasonable person standing in the shoes of the police officers to conclude that a crime has been committed and the defendant was the person who committed the crime." *Id.* The police may search an arrestee's person and areas under the arrestee's control for safety and to prevent destruction of evidence. *People v. James*, 2021 IL App (1st) 180509, ¶ 21.

¶ 26    Here, the circuit court found Officer Knudsen's testimony was credible and corroborated by the body worn camera; namely, that Officer Knudsen observed defendant throw an object from behind the white van, heard the object fall, approached the area, and identified it as a handgun. Though an airborne gun is not visible in the body worn camera footage, that does not render the opposite conclusion clearly evident. The circuit court's factual determinations were not against the manifest weight of the evidence. See *People v. Pitts*, 2024 IL App (1st) 232336, ¶ 29 ("A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." (Internal quotation marks omitted.)).

¶ 27    As to the legal conclusion, the circuit court did not err: Officer Knudsen developed reasonable suspicion to justify an investigatory detention that quickly developed into probable cause. Initially, as he approached the scene, Officer Knudsen developed reasonable, articulable suspicion that defendant was committing a crime when he observed defendant turn away from the

police in what Officer Knudsen testified was a narcotics hotspot and discard a handgun. In turn, Officer Knudsen lawfully told his partner to handcuff defendant for an investigatory stop under *Terry*. See *People v. Dorsey*, 2025 IL App (1st) 240933, ¶ 39. Further, the body worn camera shows that as Officer Hecker places defendant in handcuffs, defendant drops the dark bag, which was later revealed to contain cannabis. There is no evidence in the record that Officer Hecker searched the bag when they placed him in handcuffs or during the frisk.

¶ 28    Rather, within seconds of detention, defendant said he did not have a valid firearm identification card. At this point, the officers had probable cause to believe defendant had committed a crime. In Illinois, it is unlawful to carry a firearm in public unless one of four exceptions is met, none of which were present. Public carry is lawful only if the firearms:

> "(i) are broken down in a non-functioning state; or (ii) are not immediately accessible; or (iii) are unloaded and enclosed in a case, firearm carrying box, shipping box, or other container by a person who has been issued a currently valid Firearm Owner's Identification Card; or (iv) are carried or possessed in accordance with the Firearm Concealed Carry Act by a person who has been issued a currently valid license under the Firearm Concealed Carry Act ***." 720 ILCS 5/24-1(a)(4), 24 (a)(10) (West 2020).

Here, the firearm was in a functioning state, immediately accessible, loaded, and not enclosed in a case. Further, under the Firearm Concealed Carry Act (430 ILCS 66/1 *et seq.* (West 2020)), a person carrying in public must possess a concealed carry license "at all times." *Id.* § 10(g). When asked by law enforcement during an investigatory stop, a concealed carrier must disclose whether they have a license. *Id.* § 10(h). Accordingly, the police had probable cause to believe defendant committed a crime the moment they discovered he did not have a valid firearm owner's identification card or concealed carry license. See *People v. Thomas*, 2019 IL App (1st) 170474, ¶ 38 (explaining that defendant's unprovoked flight from police and transfer of a gun to another person would lead a reasonable person to believe defendant violated the FOID Card Act or

Concealed Carry Act). In turn, the police had lawful authority to arrest defendant and search the bag incident to arrest.

¶ 29     Defendant argues Officer Knudsen did not actually see the handgun being thrown. But Officer Knudsen identified the unknown object as a handgun as he approached the bush soon after it landed. Defendant also argues that the sound of a handgun hitting the bush cannot be heard in the body worn camera. But Officer Knudsen developed reasonable suspicion when he *saw* that the object was a handgun. Next, defendant argues that no inference can be drawn from his flight from police because people may have innocent reasons to walk away from law enforcement. However, the law recognizes that evasive behavior is a relevant factor in the reasonable suspicion inquiry. *People v. Salgado*, 2019 IL App (1st) 171377, ¶ 31 (citing *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)). Further, presence in a high crime area is relevant to reasonable suspicion. *Id.* ¶ 25. Given that Officer Knudsen saw defendant discard a handgun in a bush, the police had reasonable suspicion regardless of whether defendant evasively walked away from the police.

¶ 30                    C. Other-Crimes Evidence: Stipulation & Jury Instruction

¶ 31                              1. *Stipulation Instruction*

¶ 32     Defendant argues the circuit court committed plain error when it advised the jury before the parties' stipulation to defendant's prior convictions that the stipulation was the same as other evidence because doing so invited the jury to use the other-crimes evidence for a propensity inference. The State contends the circuit court adhered to the language in the Illinois pattern instruction on stipulations and appropriately read it to the jury before the parties entered their stipulation.

¶ 33    Defendant failed to object and did not preserve the issue. Defendant seeks plain error review. Plain error permits review of forfeited errors only if the evidence satisfies one of two prongs. *People v. Jackson*, 2022 IL 127256, ¶ 19. We may review "where the evidence in a case is so closely balanced that the jury's guilty verdict may have resulted from a clear or obvious error and not the evidence" or "when a clear or obvious error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *Id.* The first step is to determine whether a "clear or obvious" error occurred. *Id.* ¶ 20.

¶ 34    The purpose of jury instruction is to convey to the jury "correct principles of law applicable to the submitted evidence." *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 507 (2002). While pattern instructions are not exempt from challenge, *Powers v. Illinois Central Gulf R.R. Co.*, 91 Ill. 2d 375, 385 (1982), instructions are "presumed to be accurate statements of Illinois law." *Hana v. Illinois State Medical Inter-Insurance Exchange Mutual Insurance Co.*, 2018 IL App (1st) 162166, ¶ 36. The Illinois criminal pattern jury instruction on stipulations "should be given before a stipulation is read to the jury." Illinois Pattern Jury Instructions, Criminal, No. 3.24, Committee Note.

¶ 35    Here, before the State read the stipulation that defendant was previously convicted of qualifying felonies for the armed habitual criminal offense, the circuit court simply explained to the jury that a stipulation is evidence:

"Ladies and gentlemen, a stipulation is actually evidence. It's to be considered by you as evidence, just as if you heard somebody testify concerning it from the witness."

¶ 36    The circuit court used substantially the same language as the Illinois pattern instruction, which provides:

> "You are now about to hear a stipulation. A stipulation is an agreement between the parties [as to the existence of certain facts. You should consider this evidence in the same manner as all the other evidence in the case.] [or] [that if _____ were called to testify, [(he) (she)] would testify as set forth in the stipulation. You should consider this testimony in the same manner as if _____ were here in court, testifying under oath.]" Illinois Pattern Jury Instructions, Criminal, No. 3.24.

The circuit court's instruction was substantially similar to the pattern instruction, and there is no argument that the pattern instruction is inaccurate. Further, the instruction was warranted under the circumstances.

¶ 37    Defendant maintains that the circuit court told the jury that the evidence of prior convictions was "ordinary" evidence "as any other evidence testified to by a witness." In turn, defendant invites us to apply *People v. Cavette*, 2018 IL App (4th) 150910, ¶ 28, where the trial court erred in explaining to the jury that the stipulation to qualifying offenses could be considered "along with all of the other evidence." The *Cavette* court explained that the trial court's instruction was an erroneous statement of law because it erroneously invited the jury to use the other-crimes evidence for propensity purposes. *Id.* ¶¶ 31-32; see also *People v. Johnson*, 2013 IL App (2d) 110535, ¶ 71 (explaining that the trial court erroneously advised the jury before a stipulation to other-crimes evidence that they could consider it "like any other evidence in this case to come to your verdict").

¶ 38    However, the circuit court did not equate it to all other evidence like the trial courts in *Cavette* or *Johnson*. The circuit court adhered to the substance of the pattern instruction and told the jury that the stipulation was "actually evidence" as if it had come from a witness. The appellate court addressed a similar challenge in *People v. McGill*, 2022 IL App (2d) 200787-U, ¶¶ 20-21, 41 and held that a circuit court does not misstate the law when it instructs the jury that a stipulation to past crimes is actual evidence as if it had been testified to by a witness.

¶ 39                          2. *Other-Crimes Limiting Instruction*

¶ 40    Defendant argues the circuit court committed plain error when it denied defendant's request to instruct the jury on the limited use of evidence of prior convictions where the circuit court thought it would confuse the jury. The State argues even if the circuit court erred, it was not plain error. Defendant did not preserve the issue by raising it in a written post-trial motion for a new trial, and defendant seeks plain error review. See *People v. Enoch*, 122 Ill. 2d 176, 186-87 (1988). As noted, under plain error, we may review "where the evidence in a case is so closely balanced that the jury's guilty verdict may have resulted from a clear or obvious error and not the evidence" or "when a clear or obvious error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *Jackson,* 2022 IL 127256, ¶ 19. The first step is to determine whether a "clear or obvious" error occurred. *Id.* ¶ 21.

¶ 41    In *People v. Durr*, 215 Ill. 2d 283, 300-01 (2005), our Supreme Court held that the circuit court erred in denying a jury instruction on the basis that it was "confusing." The *Durr* court explained that under Supreme Court Rule 451(a), a circuit court "shall" give a jury instruction "unless the court determines it does not accurately state the law." (Internal quotation marks omitted.) *Id.* at 301. The pattern instructions have been "painstakingly drafted *** to clearly and concisely state the law," and "[t]rial judges should not take it upon themselves to second-guess the drafting committee where the instruction in question clearly applies." (Internal quotation marks omitted.) *Id.*

¶ 42    Here, defendant requested pattern criminal instruction 3.13X, which explains that the jury may only consider evidence of a defendant's prior convictions for the limited purpose of proving the prior convictions as an element of an offense:

"Ordinarily, evidence of a defendant's prior conviction of an offense may [be considered by you only as it may affect his believability as a witness and must] not be considered by you as evidence of his guilt of the offense with which he is charged.

However, in this case, because the State must prove beyond a reasonable doubt the proposition that the defendant has previously been convicted of ____, you may [also] consider evidence of defendant's prior conviction of the offense of ____ [only] for the purpose of determining whether the State has proved that proposition." Illinois Pattern Jury Instructions, Criminal, No. 3.13X (approved Oct. 17, 2014) (hereinafter IPI Criminal No. 3.13X);

see also Ill. R. Evid. 404(b) (eff. Jan. 1, 2011) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity ***."). The committee notes state that the instruction was created "to deal with the admissibility of evidence regarding a defendant's prior conviction when this prior conviction is an essential element of the charged offense." IPI Criminal No. 3.13X, Committee Note. Prior conviction was an element of the armed habitual criminal offense. Defendant requested the instruction, and the evidence supported the instruction. There is no argument that instruction 3.13X is an inaccurate statement of law. Defendant was entitled to the instruction.

¶ 43    However, neither prong of plain error is satisfied. "An erroneous instruction constitutes a substantial defect, or plain error, when the flawed instruction created a serious risk that the defendant was incorrectly convicted because the jury did not understand the applicable law, so as to threaten the fundamental fairness of defendant's trial." *People v. Anderson*, 2012 IL App (1st) 103288, ¶ 60. Under the first prong of plain error, to determine if the evidence was closely balanced, "a reviewing court must evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case." (Internal quotation marks omitted.) *People v. Williams*, 2022 IL 126918, ¶ 34. Here, the evidence was not closely balanced. Officer Knudsen testified that he saw defendant discard a handgun into a bush, and defendant did not have

15

a valid firearm identification or a concealed carry license. Defendant's impeachment inquiries did not significantly contradict Officer Knudsen's testimony or undermine his credibility. Further, Officer Knudsen testified that he observed his partner recover a dark bag from defendant and he observed his partner inventory the cannabis contained in the bag. The forensic scientist testified that the substance contained cannabis and that the description of the contents in the evidence bag matched his observations. The evidence was not close.

¶ 44     Turning to the second prong, the error was not so serious that it affected the fairness of the trial and challenged the integrity of the judicial process. Such errors must "affect the framework within which the trial proceeds, rather than mere errors in the trial process itself." *People v. Moon*, 2022 IL 125959, ¶ 29. This includes "complete denial of counsel, denial of self-representation at trial, trial before a biased judge, denial of a public trial, racial discrimination in the selection of a grand jury, and a defective reasonable doubt instruction." *Id.* Generally, "the only instructions necessary to ensure a fair trial include the elements of the crime charged, the presumption of innocence, and the question of burden of proof." (Internal quotation marks omitted.) *People v. Jackson*, 357 Ill. App. 3d 313, 321 (2005) (explaining that failure to provide a limiting instruction regarding evidence of gang membership was harmless). Here, the jury was properly instructed on the matters necessary to ensure a fair trial.

¶ 45     Defendant cites *People v. Fonder*, 2013 IL App (3d) 120178, ¶ 25, for the proposition that jury instructions implicate the fundamental fairness of a jury trial. However, in *Fonder*, the trial court failed to instruct the jury on an essential element of the crime, which the *Fonder* court explained implicates a defendant's constitutional right to have every element of a crime proved beyond a reasonable doubt. *Id.* ¶¶ 22-26 (citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000)).

16

¶ 46                                D. Chain of Custody

¶ 47                                1. *Plain Error*

¶ 48     Defendant argues the circuit court committed plain error by admitting the cannabis into evidence despite significant gaps in the chain of custody where: (1) Officer Hecker, who recovered the cannabis from defendant and inventoried it at the police station, did not testify; (2) the body worn camera does not show the contents of the dark bag recovered from defendant; and (3) there was no evidence the police took reasonable protective measures to ensure that the substance in the bag at the time of arrest was the same substance that was tested in the laboratory. The State argues the chain of custody evidence was sufficient where Officer Knudsen observed his partner recover a dark bag from defendant at the time of arrest, he observed his partner inventory the contents of the bag and send it to the lab for testing, and the forensic scientist testified that the description of the evidence marked for testing matched his observations.

¶ 49     Ordinarily, we review the admission of evidence for abuse of discretion. *People v. Brand*, 2021 IL 125945, ¶ 36. However, the issue was forfeited because defendant did not object at trial or raise the issue in a post-trial motion. *People v. Thompson*, 238 Ill. 2d 598, 611 (2010). Defendant invites us to review the issue under the first prong of plain error, arguing the evidence was closely balanced. As noted, the first step of plain-error review is to determine whether any error occurred. *Id.* at 613. However, we review plain-error challenges to chain of custody only "in the rare case where there is a complete breakdown in the chain." *People v. Banks*, 2016 IL App (1st) 131009, ¶ 68 (citing *People v. Alsup*, 241 Ill. 2d 266, 277 (2011)). This is a "formidable standard." *People v. Wilson*, 2017 IL App (1st) 143183, ¶ 32.

¶ 50    Generally, when the State seeks to introduce an object into evidence, it must lay an adequate foundation. *People v. Woods*, 214 Ill. 2d 455, 466 (2005). For narcotics, the State is "required to establish a chain of custody" because narcotics are "susceptible to tampering, contamination or exchange." *Id.* at 467. The State bears the burden to establish that the chain of custody is sufficiently complete to make it "improbable that the evidence has been subject to tampering or accidental substitution." *Id.* The State must show that "the police took reasonable protective measures to ensure that the substance recovered from the defendant was the same substance tested by the forensic chemist." *Id.* Each person in the chain of custody need not testify, nor does the State need to exclude every possibility of tampering or contamination. *Id.* But it must show that "reasonable measures" were taken to protect the evidence and that it was "unlikely that the evidence has been altered." *Id.* Once the State makes this *prima facie* case, the burden shifts to the defendant to produce "evidence of actual tampering, alteration or substitution." *Id.* at 468. If the defendant meets its burden, the burden shifts to the State to rebut. *Id.*

¶ 51    Here, there was no complete breakdown in the chain of custody. Officer Knudsen testified that he observed his partner, Officer Hecker, recover a dark bag from defendant, which is apparent on Officer Knudsen's body worn camera. Officer Knudsen testified that he later observed his partner inventory the cannabis recovered from the dark bag under inventory number 15003578 and send it to the lab for testing. The forensic scientist testified that he received inventory number 15003578 and there were no discrepancies between its description and his observations of the contents.

¶ 52    To be sure, there was no testimony that the police took reasonable protective measures to ensure that the contents of the dark bag were unaltered while it was transported from the scene of

arrest to the police station. In a comparable case, however, the appellate court found a chain of custody to be sufficiently complete where there was "no evidence" of what happened to the narcotics after they were recovered from defendant before they were ultimately analyzed by the forensic scientist. *People v. Echavarria*, 362 Ill. App. 3d 599, 607-08 (2005).

¶ 53    Defendant argues several additional points, none of which are persuasive. First, defendant argues the State failed to establish that the cannabis was seized from defendant where Officer Hecker did not testify and the body worn camera does not show that the bag contained cannabis. However, Officer Knudsen testified that he saw Officer Hecker recover a dark bag from defendant and he saw it contained cannabis at the police station. This supports the inference that defendant possessed the cannabis at the time of arrest. As noted, the State is not required to disprove every possibility of tampering or contamination, and each person in the chain need not testify. It must only show that tampering or accidental substitution was "improbable," which was satisfied here.

¶ 54    Next, defendant maintains Officer Knudsen only testified to general inventory procedures, and as such, there is no evidence of the State's inventory process in this case. However, immediately after Officer Knudsen described the general inventory procedures during the State's direct examination, he testified that he was present while his partner inventoried the cannabis:

> "Q. And describe that inventory process.
> A. So that inventory process is we weigh everything, even the containers that it's in to get a bulk weight, and then it is placed inside of heat-sealed bags, and it is locked up, and it is sent to the lab for testing.
> Q. Who inventoried those items?
> A. My partner
> Q. Were you present for that?
> A. I was."

This testimony supports the inference that Officer Knudsen observed Officer Hecker inventory the cannabis according to the procedures he had just described. Moreover, because defense counsel

did not object, the State did not have an opportunity to correct any ambiguities in Officer Knudsen's testimony. See *Wilson*, 2017 IL App (1st) 143183, ¶ 22 ("[F]orfeiture in cases such as this is particularly appropriate because, where the defendant fails to object to the foundation of evidence at trial, the State misses its opportunity to cure any error." (Internal quotation marks omitted.)).

¶ 55    Finally, defendant cites *People v. Whirl*, 351 Ill. App. 3d 464, 471 (2004), for the proposition that the chain of custody gaps warrant reversal of defendant's conviction and a new trial. But the *Whirl* court did not apply the complete breakdown standard under plain-error review. *Id.* at 471. The *Whirl* court determined the chain of custody gaps amounted to insufficient evidence to support the conviction, which is not at issue. *Id.* Here, the purported gaps in the chain of custody fall far short of the "formidable," "complete breakdown" standard.

¶ 56                    2. *Effective Assistance of Counsel*

¶ 57    Defendant argues he was deprived of effective assistance of counsel under the sixth amendment to the United States Constitution when trial counsel failed to object to the admission of the cannabis. The State argues defendant's representation was adequate where the State met its *prima facie* burden to lay foundation and there was no evidence of tampering, exchange, or contamination.

¶ 58    To establish ineffective assistance of counsel, a defendant must show (1) counsel's representation fell below an objective standard of reasonableness and (2) the defendant's case was prejudiced because of counsel's substandard representation. *Strickland v. Washington*, 466 U.S. 668, 687-89 (1984). The defendant must show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "The decision whether to object to

the admission of evidence is generally a strategic one that may not form the basis of a claim of ineffective assistance of counsel." *People v. Smith*, 2014 IL App (1st) 103436, ¶ 63 (citing *People v. Perry*, 224 Ill. 2d 312, 344 (2007)). A failure to object can amount to ineffective assistance where "there was no valid reason for failing to object to inadmissible evidence." *Smith*, 2014 IL App (1st) 103436, ¶ 63.

¶ 59    Here, there was a valid reason for counsel's failure to object: it was futile. Had counsel objected, defendant would have had the burden of production to show actual tampering, alteration, or substitution; there is no evidence of this in the record. Defendant's representation was constitutionally sufficient. See *id.* ¶ 64 (explaining defense counsel was not ineffective for failing to object to chain of custody where "[n]othing in the record suggests that counsel had evidence that would undermine the chain of custody"); see also *People v. Wilson*, 164 Ill. 2d 436, 454-55 (1994) ("[T]rial counsel's failure to file a motion does not establish incompetent representation, especially when that motion would be futile.").

¶ 60                              E. Right to Bear Arms

¶ 61    Defendant argues that Illinois's armed habitual criminal statute, 720 ILCS 5/24-1.7, is facially unconstitutional under the second amendment to the United States Constitution and *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), because the State cannot show a historical analogue for permanently banning felons from possessing firearms. Defendant also argues the statute is unconstitutional as applied to defendant because he has not been convicted of violent felonies. The State contends the statute is consistent with the nation's historical tradition of firearm regulation. Further, the State argues defendant forfeited his as-applied challenge, and in

any case, the statute is constitutional as applied to defendant because the qualifying felonies need not be violent under *Bruen*.

¶ 62    Finally, the State noted in its motion to cite additional authority that the Illinois Supreme Court recently explained that Illinois's firearm owner's identification and concealed carry statutes are constitutional, citing *People v. Thompson*, 2025 IL 129965, ¶¶ 42, 44, 46, *modified* (Sept. 22, 2025). We note, however, that defendant challenges Illinois's armed habitual criminal statute, not its licensing regimes.

¶ 63    We review a statute's constitutionality *de novo*. *People v. Gray*, 2017 IL 120958, ¶ 57.

¶ 64                                    1. *Facial Challenge*

¶ 65    To prevail on a claim that a statute is facially unconstitutional, the challenger "must establish that the statute is unconstitutional under any possible set of facts." *People v. Harris*, 2018 IL 121932, ¶ 38. The Supreme Court established a two-step test in *Bruen* to determine if firearm regulations are constitutional under the second amendment. *Bruen*, 597 U.S. at 24. First, courts must determine whether "the Second Amendment's plain text covers an individual's conduct." *Id.* If so, the conduct is presumptively protected, and the government "must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* To clear this hurdle, the government must point to "historical precedent from before, during, and even after the founding [that] evinces a comparable tradition of regulation." (Internal quotation marks omitted.) *Id.* at 27.

¶ 66    This court determined that the statute met the second prong of the *Bruen* test because there were analogous colonial and founding era laws "categorically disarming groups deemed untrustworthy or dangerous." *People v. Macias*, 2025 IL App (1st) 230678, ¶ 29, *pet. for leave to*

*appeal pending*, No. 132054 (filed Sept. 3, 2025); see *People v. Brooks*, 2023 IL App (1st) 200435, ¶¶ 90-105; see also *People v. Lopez*, 2025 IL App (1st) 232120, ¶ 23 (collecting Illinois appellate cases that held that the armed habitual criminal statute was "consistent with the United States' historical tradition of firearm regulation [citations] and, therefore, facially constitutional"), *pet. for leave to appeal pending*, No. 131973 (filed June 26, 2025). Defendant's arguments to the contrary are not persuasive, and we continue to follow *Macias* and *Brooks*.

¶ 67                                     2. *As-Applied Challenge*

¶ 68     An as-applied challenge to a statute's constitutionality is dependent on specific facts and circumstances. *People v. Harris*, 2018 IL 121932, ¶ 38. Accordingly, "it is paramount that the record be sufficiently developed in terms of those facts and circumstances for purposes of appellate review." (Internal quotation marks omitted.) *Id.* ¶ 39. As-applied challenges require an "evidentiary hearing" and "findings of fact." (Internal quotation marks omitted.) *Id.* ¶¶ 39-40 (reversing an appellate court's decision on an as-applied constitutional challenge where there was no evidentiary hearing or fact-finding by the circuit court).

¶ 69     Here, defendant concedes that he did not raise the as-applied challenge before the circuit court. However, defendant argues we can settle the as-applied challenge because "the facts and circumstances to decide the defendant's claim *** are already in the record." *People v. Holman*, 2017 IL 120655, ¶ 32, *overruled on other grounds by People v. Wilson,* 2023 IL 127666.

¶ 70     "The decisions of this court are divided on the issue of whether the exception in *Holman* extends to as-applied constitutional challenges in other contexts." *People v. Shannon*, 2024 IL App (1st) 230042, ¶ 23 (comparing cases that limited *Holman* to its facts with cases that extended it to other contexts), *pet. for leave to appeal pending*, No. 131289 (filed Dec. 9, 2024). However, we

need not decide that issue because defendant's challenge fails on the merits. This court previously held that the armed habitual criminal statute is constitutional as applied to non-violent felons. See, *e.g.*, *People v. Johnson*, 2024 IL App (1st) 231155, ¶ 28, *appeal denied,* 483 Ill. Dec. 294 (2025); *People v. Jackson*, 2025 IL App (1st) 231200-U, ¶ 41; *People v. Travis*, 2024 IL App (3d) 230113, ¶¶ 36-37, *pet. for leave to appeal pending*, No. 130696 (filed May 16, 2024).

¶ 71    Defendant argues the holding in *United States v. Rahimi*, 602 U.S. 680, 701-02 (2024), is distinguishable and should not control where the Supreme Court permitted firearm restrictions on a domestic abuser who had been found to pose a credible threat to the physical safety of others. However, as noted, this court has upheld the armed habitual criminal statute based on *Bruen* analyses of historical firearms regulations. This court cited *dicta* in *Rahimi* merely for "additional support" to its historical analysis. *Johnson*, 2024 IL App (1st) 231155, ¶ 25; see also *Jackson*, 2025 IL App (1st) 231200-U, ¶ 42. At bottom, defendant failed to raise any persuasive arguments to disturb this court's prior holdings that the armed habitual criminal statute is facially constitutional and constitutional as applied to non-violent felons.

¶ 72                                      III. CONCLUSION

¶ 73    The judgment is affirmed.

¶ 74    Affirmed.